HOGUE *v.* WELLS.

1. ELECTION OF REMEDIES—ASSUMPSIT—WAIVER OF TORT.

Not knowing at the time of commencing an action that defendant had converted money collected for plaintiff to his own use, the plaintiff did not waive her right to amend her declaration from assumpsit to trover, since full knowledge is essential to a claimed waiver.

2. TROVER AND CONVERSION—CHECKS—EVIDENCE—AGENCY.

Where testimony was introduced tending to prove that plaintiff's agent received a check in payment for a note in his hands, and that the check had been marked paid by the bank on which it was drawn, and where the trial court refused to permit the agent to testify that he received no money or its equivalent for the check, at the trial of an action of trover, and it appeared that the relation between plaintiff and defendant was of a fiduciary character and not that of debtor and creditor, and defendant had the note in his hands for collection, trover was correctly held to be a proper remedy for the unlawful retention of the fund, and the trial court properly excluded the testimony offered to show that the payment by check was not in fact what the transaction, on its face, purported to be.

STONE, OSTRANDER, BIRD, and MOORE, JJ., dissenting.

Error to Berrien; Bridgman, J. Submitted April 24, 1913. (Docket No. 48.) Decided March 28, 1914.

Trover by Mary R. Hogue against Benjamin F. Wells for the conversion of funds belonging to plaintiff. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed by an equally divided court.

*John J. Sterling*, for appellant.

*Cady & Andrews*, for appellee.

McALVAY, C. J. In an action in trover brought by plaintiff against defendant for the unlawful conversion of certain money belonging to her, she recovered a judgment upon an instructed verdict. Defendant has removed the case to this court for review and asks a reversal, assigning errors upon the rulings of the court during the trial and in instructing a verdict against him.

The following are the facts in the case: Defendant was at the time of the transaction in dispute, and had been for a period of years prior thereto, assistant cashier of the Benton Harbor State Bank. On September 16, 1909, he sold and assigned to plaintiff for a valuable consideration the following promissory note, together with a certain certificate of stock held by him as collateral security therefor:

"$2,400. BENTON HARBOR, MICH., Sept. 1, 1908.

"On the first day of each month after date for value received, I promise to pay to the order of B. F. Wells, forty dollars ($40.00) until the whole principal sum of two thousand four hundred dollars with interest on the same at the rate of six per cent. per annum payable annually shall have been paid on all principal sums at any time unpaid, and if the interest is not paid when due it shall become as principal and draw interest at the rate of six per cent. per annum, payable annually. It is also agreed that A. S. Miles shall

deposit with and assign to B. F. Wells all his stock in the Miles Shoe Company as collateral security for the repayment of the said two thousand four hundred dollars and the interest thereon.

[Signed]   "A. S. MILES."

At the same time he indorsed on the back of said note and signed the following written guaranty:

"BENTON HARBOR, MICH., Sept. 16, 1909.

"For a valuable consideration, I do hereby sell, assign and transfer to Mary R. Hogue, all my right, title and interest in and to the within instrument, and further for a valuable consideration, I do hereby guarantee the payment of the sums of money in the within instrument at the times and in the manner therein specified, I also assign to said Mary R. Hogue the certificate of stock referred to in said note and the same is hereby attached.

[Signed]   "B. F. WELLS."

At the time of such transfer there was a balance of $2,200 remaining unpaid on said note. Plaintiff at this time had a credit account in and did business with said bank. She left this note in the possession of defendant with instructions to collect for her and, as from time to time the installments of principal and interest became due, to receive and place the same to her credit in the bank. Defendant received the note from her for that purpose and made collections for her from the maker of said note each and every month thereafter during the years 1909 and 1910 and certain payments amounting to five monthly payments in 1911, and indorsed all of said payments received by him upon said note and placed the amounts so collected for her to her credit in the bank. On June 17, 1911, the maker of plaintiff's note, who was secretary and treasurer of the Miles Shoe Company, of which defendant had been president for several years, drew the check of said company on the Benton Harbor State Bank, of which defendant was assistant cashier, for the sum of $3,724, payable to the order of defendant;

such sum being made up of the amount of a certain $2,000 indebtedness of A. S. Miles to defendant and $1,724.46, the amount of the balance of plaintiff's note. Miles delivered this check to defendant, who indorsed it, presented it to the bank, which honored it and stamped it paid, and returned it in due course of business to the maker. The following is a copy of this check, and the indorsement and bank stamp upon it:

"No. 3528.
                    "BENTON HARBOR, MICH., June 17, 1911.
    "Benton Harbor State Bank pay to the order of B. F. Wells three thousand seven hundred and twenty-four and 46-100ths ($3,724.46). A. S. Miles notes.
                                "THE MILES SHOE CO.,
                                    "per A. S. MILES."
    Indorsed on the back: "B. F. Wells." Stamped on the face of it: "Paid June 17, 1911, Benton Harbor State Bank, Benton Harbor, Michigan."

Defendant admits that this check represented the amount of the two items named. This check represented Miles' personal indebtedness to defendant, and was charged to his personal account at the time in the books of the Miles Shoe Company.

Of this check of $3,724.46, which was received and indorsed by Wells, and paid to him by the bank, he retained the whole amount and did not account for and deliver to her by depositing to the credit of plaintiff the amount of her specific interest therein. At the time of this transaction, when defendant received this check from Miles in payment of the indebtedness to him and the balance of plaintiff's note, she was in the West visiting. Upon her return, and before the fact that the entire balance on her note had been paid to her agent and collector by the maker came to her knowledge, she began a suit in assumpsit on this note, commenced by summons, and afterwards filed declaration. In this suit there was afterwards a substitution of attorneys, and, when her present

attorneys learned through Mr. Miles of the payment of the note in question, a motion was made by them for leave to withdraw the declaration filed and for permission to file a declaration in trover. This motion was granted and a declaration in trover filed, on payment of costs. Defendant pleaded the general issue to this declaration, with notice that plaintiff had elected to bring suit in assumpsit instead of trover and had therefore waived her right of action against defendant in trover. The trial now under discussion and consideration before this court was the trial had upon this issue. At the close of plaintiff's case defendant moved for a directed verdict upon the ground stated in the motion attached to the plea.

The contentions of defendant upon the trial of the case were:

(1) That plaintiff had waived her right of action in trover by bringing an action in assumpsit.

(2) That an action of trover for the conversion of this money will not lie against defendant in this case, even if it should be held that he had received it.

1. The information that the balance unpaid on plaintiff's note had been fully paid to defendant did not come to the knowledge of plaintiff until after the declaration in assumpsit had been filed in this suit and the substitution of attorneys had been made. The contention that plaintiff had waived a right of action in trover, therefore, cannot be sustained, for the reason that at the time plaintiff had no knowledge that such right of action existed. It is well settled that a party cannot waive a right of which he has no knowledge.

"There can be no waiver unless the person against whom the waiver is claimed had full knowledge of his rights and of facts which would enable him to take effectual action for the enforcement of such rights." *Clare County Sav. Bank* v. *Featherly*, 173 Mich. 292 (139 N. W. 61), citing 29 Am. & Eng. Enc. Law (2d Ed.), p. 1093.

2. Under this contention defendant urges that this money, for the wrongful conversion of which this suit is instituted, if in his hands, was a general indebtedness on his part to the plaintiff, and that this suit is brought in trover to recover money generally and not a specific fund of money delivered to him to be returned to her in specie. There is no dispute in this case but that the relation between plaintiff and defendant was that of principal and agent. He was a collector for her of the amount of this note and was recognized and had acted as such for nearly two years, about which there is no dispute. A specific portion of the proceeds of the check which Miles gave defendant and which the bank paid him was the property of plaintiff received by defendant to be delivered in a prescribed manner to her. And this is not disputed by defendant, and in fact his contention on this proposition now under consideration admits it. This fund never came to his hands as his money. He never had any right to its possession except for a certain purpose. His relations in this matter to plaintiff were fiduciary. His retention of this fund was therefore an unlawful conversion, and like conduct is defined and punished in this State as statutory larceny. To hold that such wrongful conversion cannot be made the basis of an action in trover would seem to be a stultification of judicial conscience. Under the circumstances of this case, trover was a proper remedy. The trial court therefore was not in error in denying the motion of defendant to instruct a verdict against plaintiff.

Upon the trial defendant made an offer to prove that no payment was ever made by Miles to him of the balance of plaintiff's note; that he, being a creditor of the Miles Shoe Company to the amount of $2,000, on his individual claim and the bank a creditor of about $2,700, and he having guaranteed the payment of plaintiff's note when he sold it to her and transferred the collateral, knowing of the uncertain finan-

cial condition of the Miles Shoe Company, undertook
to get security for the entire amount, $6,300, on these
claims; that in furtherance of such undertaking one
W. G. Newland took notes of the Miles Shoe Company
for $6,300 secured by chattel mortgage upon its entire
stock and property, and Newland drew and delivered
his check on the Benton Harbor State Bank for that
amount to said company; that this check was indorsed
by the Miles Shoe Company, presented to the bank,
and stamped paid by said bank June 17, 1911; that
the check of $3,724.46, which has already been re-
ferred to, was drawn against this credit; that in truth
and fact no money was ever paid on this transaction,
but that it was done in order to accomplish defend-
ant's plan to get bona fide security for these items of
indebtedness above stated.

The court refused to pass upon this offer made by
defendant as a whole, for reasons given by him, which
will appear in excerpts which we will quote from the
record. This offer of proof was made at the close of
the cross-examination of Mr. Miles, plaintiff's last
witness, when Mr. Sterling, counsel for defendant,
said:

"*Mr. Sterling:* Before you rest I want to make an
offer of proof, and I have a motion to make also. (The
jury retired from the courtroom.)

"*Mr. Sterling:* Since last night I wrote out more
in detail what I wanted to put in the record, of what
I wanted to show, and I will read it and have it in the
record."

This statement was then read into the record. As
given in this opinion it is very much condensed. When
the reading was finished, the following colloquy be-
tween court and counsel occurred:

"*The Court:* What do you say?

"*Mr. Andrews:* I haven't anything to say. Ques-
tions have been asked about everything that has been
presented. About half the testimony has been ad-
mitted and the other—

"*The Court:* Do you object to it?

"*Mr. Andrews:* There is nothing before the court.

"*Mr. Sterling:* I will make this offer.

"*The Court:* Plaintiff has rested his case.

"*Mr. Sterling:* But not until I get the offer in.

"*The Court:* It is impossible to rule on that offer, Mr. Sterling, in consideration of the condition of the proofs. One part of your offer has been given and received in evidence, so it would be impossible to rule on that offer in general. Some parts have been introduced and some parts the court has sustained the objection to.

"*Mr. Sterling:* I offer to show all that proof by Mr. Miles, the last witness on the stand for plaintiff.

"*The Court:* I shall decline to rule on the offer as a whole at this time, irrespective of any technicalities, as it would be impossible, it seems to me, under the condition of the evidence as it now appears. Part of that that you put in there has been admitted.

"*Mr. Sterling:* Just enough admitted to leave the jury in doubt as to certain points I want to clear up.

"*The Court:* Under the theory of the court, a large part that you have offered is inadmissible entirely. I shall decline to rule upon the offer as a whole, but if counsel desires to recall Mr. Miles he may recall him and ask such questions as he desires if you have omitted any question.

"*Mr. Sterling:* I want to show I offer this testimony, and what the court has said appears on the record, and I take exception to the ruling of the court, and to the attitude of the court to rule either favorably or unfavorably on the testimony."

Counsel for defendant then made a motion that the court direct a verdict in his favor. This motion included the propositions relative to the declaration in trover, and also that trover was not the proper remedy, which have already been discussed. It was denied, and one of the errors assigned is upon such denial. In this opinion we have already considered and disposed of these questions against the contention of defendant.

A verdict was directed by the court in favor of plaintiff, and upon this direction error is assigned. It is

apparent that, if the court was in error in excluding the above offer of proofs made by defendant, such verdict should not have been directed.

Defendant insisted that the court should consider the offer made as a whole, and the exception taken to the refusal of the court "to rule either favorably or unfavorably on the testimony offered" is that relied on. It will be noted that the court did not deny counsel the right to offer testimony in the ordinary way; in fact, the court, in declining to rule upon the offer as a whole, suggested to counsel to recall the witness and further examine him. Counsel was in error in insisting as he did upon a ruling upon the offer as made. He should have followed the suggestion of the court.

This leaves to be determined the question whether the record discloses any evidence in the case on the part of defendant to be submitted to the jury. An examination of the entire record satisfies us that there was no such evidence, and that the court was not in error in instructing a verdict for plaintiff.

The judgment of the circuit court is affirmed.

BROOKE, KUHN. and STEERE, JJ., concurred with MC-ALVAY, C. J.

OSTRANDER, J. *(dissenting).* Plaintiff's right to recover in this action is based, initially, upon the fact that she owned a note for $2,400, dated September 1, 1908, payable $40 each month, with interest at 6 per cent. per annum, payable annually, made by one A. S. Miles to defendant and sold and assigned to plaintiff by defendant September 16, 1909, payment of which note, according to its terms, defendant guaranteed. Payment of the note was secured by a collateral assignment of stock of the Miles Shoe Company. Payments were made on this note to and including the one due in May, 1911, and when this action

was begun in January, 1912, only a portion of the note was due and only a portion of it could have been recovered, of the maker or the guarantor, in an action on the note.

Plaintiff's right to recover rests immediately upon the alleged fact that defendant, who had the note for collection of the monthly payments, received payment of the entire balance due thereon June 17, 1911, by way of a check dated that day, made by the Miles Shoe Company, payable to the order of defendant. It will be noted that the Miles Shoe Company was not the maker of the note and not obligated to pay it; nor could plaintiff have been obliged, at that time, to accept payment of the note. The check was produced and is set out in the opinion of Mr. Justice McAlvay. As he points out, the check was drawn on the Benton Harbor State Bank, and it bore on its face the bank stamp, "Paid June 17, 1911." In addition, plaintiff introduced the testimony of Mr. Miles, who testified that he paid the note in question to defendant by way of this check. There is the admission of the defendant that the check—one of two or more checks given —was for the amount of the note and for other indebtedness owed to defendant. This is, in substance, the evidence tending to prove that defendant had ever received money or money's worth on plaintiff's account. In saying this, I have not overlooked the testimony of defendant, upon his cross-examination, to be hereinafter referred to. Such evidence as the check afforded of payment to and receipt by defendant of money belonging to plaintiff was by the court held to be indisputable.

Defendant offered to prove that the check did not represent money and that not a penny of cash ever was disturbed by it, and, further, that none of the parties to a transaction of which the giving of the check was a part ever intended that any money should

pass by the check. He offered to prove that the Miles Shoe Company and A. S. Miles were indebted to defendant in the sum of $6,300, evidenced by notes of which the one belonging to plaintiff was one; that the shoe company was involved, financially; that, to obtain security, a third person, one W. G. Newland, was introduced into the affair; that to Newland Miles gave three notes of $2,100 each, dated June 10, 1911, and to secure their payment executed a chattel mortgage on the stock of goods of the shoe company; that in return for these notes Miles received from Newland the check of defendant, drawn on the Benton Harbor State Bank, for $6,300; that Newland indorsed the notes and assigned the chattel mortgage to defendant for the check; that against this apparent credit created by defendant's check, Miles drew checks to the same amount, in payment of old notes, including plaintiff's note, and in this manner new notes, with new security, were substituted for the old; and that not one dollar in cash changed hands; and that no party to the transaction intended that any money should change hands. Repeatedly, rulings such as are indicated in the following excerpt from the record were made by the court (the witness Miles was being cross-examined) :

"*Q.* Did you get any money from the bank on this check given by W. G. Newland to you on the 10th of June, 1911?

"*Mr. Andrews:* I object to that as immaterial and irrelevant.

"*The Court:* The objection is sustained.

"*Mr. Sterling:* Note an exception.

"*Q.* Was there a single penny of coin or currency that you obtained on the Newland check, or that Mr. Wells obtained on your check given him on the 17th of June?

"*Mr. Andrews:* I object to the question.

"*Q.* Was there any money, either currency or coin, obtained by anybody on that transaction?

"*Mr. Andrews:* I object to the question as irrelevant and immaterial.

"*The Court:* The objection will be sustained. I don't think it is well to contradict the paper itself.

"*Mr. Sterling:* Note an exception."

Defendant was a witness and gave testimony. The following is a portion of what took place upon his direct examination:

"*Q.* Does this check, dated June 17, 1911, which bears your signature, marked 'Exhibit 2,' represent any money that you obtained from the Benton Harbor State Bank to the Miles Shoe Company?

"*Mr. Andrews:* We object to the question as irrelevant, incompetent, and immaterial.

"*The Court:* The objection will be sustained. The paper speaks for itself.

"*Q.* During the entire transaction between you and Miles, in which this check figures, and was given to you, did you obtain for Mrs. Hogue from Mr. Miles a single penny?

"*Mr. Andrews:* I object to that question as irrelevant, incompetent, and immaterial, and, further, calls for the conclusion of the witness.

"*The Court:* The objection will be sustained, and the question has substantially been answered three times, and has been substantially asked and ruled on three times.

"*Mr. Sterling:* I take exception to the ruling of the court.

"*Q.* Have you in your possession, or have you ever had in your possession, any money belonging to Mrs. Hogue that you have not turned over to her?

"*Mr. Andrews:* The same objection.

"*The Court:* That objection will be sustained also. That would be his conclusion. What you are endeavoring to get at is his legal conclusion.

"*Mr. Sterling:* I do not think the question is susceptible of that interpretation.

"*The Court:* The court so thinks it is. There is a paper signed by Mr. Wells in which it appears that there was $3,700 passed to him. That represents money because it was paid to him by the bank, and that says it was to pay the Miles notes, and that whole paper is to be taken together. As long as the bank paid him that money, he must have had it. The ques-

tion whether it was or not to pay the Miles notes—it was to pay some notes, and the court held if it didn't pay those notes you might show what notes it was intended to pay, but that he had that money. A blanket question whether he had the money in his possession that he had not paid to Mrs. Hogue might be misleading to the jury.

"*Mr. Sterling:* The witness testified that he did not get any money on this check.

"*The Court:* No, he has not. The court said he could not contradict that paper very well.

"*Mr. Sterling:* I take an exception to the ruling."

It is said in the brief for appellee:

"The trial court held that the check being drawn to defendant, as payee, and indorsed by him upon its back, and no other indorsement appearing thereon, except the stamp 'Paid' by the bank, and the check being returned to Miles, the maker, in the regular course of business showed conclusively that Miles had paid defendant the amount of money named in the check."

This action is trover for money. It may be conceded that if, when all of the facts are elucidated, it appears that defendant directly or indirectly received from the maker of plaintiff's note, or from anybody, money in payment thereof, he may be held liable in trover for the money so received by him. Defendant held the note for collection and if money, or its equivalent, was paid to him for plaintiff, he was bound to pay it over to her. It must be held, however, that the check he received was not conclusive evidence that he received any money. He had the right to show, and was prevented from showing, that no money came to him, and that no one intended that any should come to him—to show the real transaction. *Alfred Shrimpton & Sons* v. *Culver,* 109 Mich. 577 (67 N. W. 907).

Defendant testified on cross-examination that, having concluded the transaction referred to, he did not pay plaintiff the amount due on her note because he regarded plaintiff indebted to himself in a greater

sum. This statement he later on amended; but, assuming that the jury had the right to take this statement as true, it does not change the legal aspect of the affair. Plaintiff was not bound to accept for her old note and defendant's guaranty a new note and chattel mortgage security. Defendant had the right to pay her her note and himself own the new secured notes. And if plaintiff insisted upon the demand evidenced by her note, she could insist upon payment only in accordance with its terms, namely, $40 monthly.

It is said in the brief of counsel for appellee:

"In conclusion, we submit the real and only question in this case is whether the trial court should have permitted defendant to have shown that Newland was a mere figurehead in the case, and loaned himself, and his credit, to defendant to secure defendant's claim against Miles, by Newland taking a note and chattel mortgage from Miles, and then assigning this note and mortgage to Wells, on the ground that this circuitous transaction was for the purpose only of securing the indebtedness from Miles to Wells. The real result of this transaction, if it had been successful, would have been to defeat the claims of all the other creditors of Miles, and the Miles Shoe Company, and enforced the payment to defendant of his claim in full.

"Defendant says the purpose of this transaction was only to secure his claim against Miles. Defendant could have taken the chattel mortgage direct from Miles to himself, and secured his claim. Then the real object in involving Newland in the transaction was to gain an undue advantage over the other creditors of Miles by having the deal pass through the bank, and through an apparently innocent third party, thereby leaving behind the footprints of a legitimate transaction, and have the transaction less liable to a successful attack by the injured creditors of Miles. The defendant having failed in this unworthy attempt, by these creditors asserting their rights before the expiration of four months, fixed by the bankruptcy law, will not permit defendant to dispute the payment of the Hogue note by Miles to the defendant with the

money he (Miles) had received from Newland, and for which he had given Newland his note secured by a chattel mortgage. As held by the trial court, it is immaterial where Miles obtained his money to pay defendant. However, it does appear by defendant himself that he obtained it from Newland. Plaintiff's action cannot be defeated by defendant showing that at the time the money was obtained from Newland, that it was understood that defendant was to pay back to Newland the money he (defendant) had received from Miles, and take an assignment of the Miles note and chattel mortgage from Newland. Defendant will not be permitted to play fast and loose with the courts in this manner, changing front as often as it appears to him to be to his advantage so to do. As this court has many times said, Mr. Wells 'will be left to lie in the bed he has made for himself.'

"The offer of defendant's counsel set forth on pages 46 and 47, of the record, shows that the defendant's position was that he had a right to show that, at the time Miles obtained the money from Newland to pay Wells, it was agreed that Newland was to assign the note and mortgage back to defendant, and, if so shown, it would refute the question of payment to defendant of the Hogue note. The proposition itself shows he had no such right. The payment from Miles to defendant was bona fide, or it was not; and, if not, it was fraudulent. If it was fraudulent, defendant was a party to the fraud, and he will not now be permitted to use this fact to defeat plaintiff's action. If the payment was bona fide the payment was conclusively established. In either event, defendant is bound by the payment, and the case should be affirmed."

Upon this, the comment which I make is this: There was a certain transaction, as a result of which plaintiff is claiming that defendant is liable to her in trover for money. If the transaction had not occurred, she would have no foundation for her action. Defendant seeks to show all of it. She seeks to rely upon the transaction to the point where the facts, with certain alleged rules of law, benefit her. It was not a divisible transaction. To the demand that the whole

transaction be shown, it is no answer to say that in its entirety it was probably intended as a fraud upon the creditors of Miles, or of the Miles Shoe Company. The court does not sit in this case to penalize the defendant for his fraudulent conduct, if it was fraudulent, nor to permit plaintiff to profit by such portion of it as appears to benefit her. The essential thing to be determined is whether defendant, in fact, ever collected any money for plaintiff which he refused to turn over to her. The history of the whole of the transaction in the course of which it is claimed that such a collection of money was made should have been admitted in evidence.

It seems to me to be unfortunate that the real, the meritorious, question in the case should not be considered in the majority opinion; that the case should be made to turn upon a ruling that an offer of counsel to produce testimony was too broad. I have pointed out that the defendant, by repeated rulings of the trial court, was denied the right to prove that he received no money on the checks, no money from any source, for the plaintiff. To those rulings exceptions were taken, and error is assigned upon them. These rulings, these exceptions, the majority of the court decline to even consider.

The judgment should be reversed and a new trial granted.

STONE, BIRD, and MOORE, JJ., concurred with OSTRANDER, J.