CLAY, Circuit Judge.
I concur in the majority opinion insofar as it affirms summary judgment in Cooper’s favor on Olympic’s conversion claim. That claim was properly dismissed because the most reasonable interpretation of Olympic’s complaint is that it alleges only a claim of statutory conversion and Olympic does not contest the dismissal of its claim for statutory conversion. As to the fraud and civil conspiracy claims, however, I must respectfully dissent because in my view there are genuine issues of material fact such that a trial on those claims is required. Fed.R.Civ.P. 56. In particular, it is my view that Cooper may be held individually liable for the torts of the entities that he represented in an official capacity (Wolverine and IVI). Furthermore, regardless of whether Cooper can be held liable for Wolverine’s and IVI’s tortious conduct, he can be held liable for tortious conduct in which he actively participated. In other words, the majority’s veil-piercing analysis does not, as its opinion suggests, resolve this case.
We review de novo a district court’s decision to grant summary judgment. Cockrel v. Shelby County Sch. Dist., 270 F.3d 1036, 1048 (6th Cir.2001). Summary judgment must be granted if the pleadings and evidence “show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed. R. Civ. P. 56(c). A dispute over a material fact is only a “genuine issue” if a reasonable jury could find for the nonmoving party on that issue. Cockrel, 270 F.3d at 1048 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In reviewing the district court’s grant of summary judgment, this Court must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. Id. (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).
Generally, the denial of a motion to reconsider is reviewed for an abuse of discretion. Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 454 (6th Cir.2003) (citing GenCorp, Inc. v. Am. Int’l Underwriters, 178 F.3d 804, 832 (6th Cir.1999)). However, when a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, this Court conducts a de novo review using the same legal standard employed by the district court. Id. at 454-55 (citing Smith v. WalMart Stores, Inc., 167 F.3d 286, 289 (6th Cir.1999); Columbia Gas Transmission, Corp. v. Limited Corp., 951 F.2d 110, 112 (6th Cir.1991)).
The district court granted Defendant Cooper summary judgment on Olympic’s claims for breach of contract, conversion, fraud, civil conspiracy, and constructive trust on the ground that Cooper was an officer of Wolverine and IVI, and Olympic had failed to allege facts showing that it was appropriate to pierce these entities’ *267 corporate veils in order to hold Cooper hable for their actions. The district court, however, construed Plaintiffs complaint too narrowly and the majority has now repeated the error. A fair reading of the complaint shows that Olympic seeks to impose liability not only on Wolverine and IVI, but on Cooper personally for his own actions. The allegations concerning breach of contract, conversion, fraud, civil conspiracy, and constructive trust make no distinction between Cooper’s capacity as a representative of Wolverine and IVI and his personal capacity. Accordingly, even accepting the district court’s conclusion, adopted by the majority here, that veil-piercing is inappropriate to hold Cooper hable for Wolverine and IVTs actions, this holding would not preclude Olympic from seeking to impose liability on Cooper for his own actions.
Michigan law clearly distinguishes between a corporate officer’s liability for his own tortious conduct and the ability to hold a corporate officer hable for the actions of the corporation through veil-piercing. The Michigan Court of Appeals has held that “[i]t is beyond question that a corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation.” Attorney General v. Ankersen, 148 Mich.App. 524, 385 N.W.2d 658, 673 (1986) (citations omitted); see also Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc., 178 Mich.App. 570, 444 N.W.2d 210, 213 (1989) (‘When conversion is committed by a corporation, the agents and officers of the corporation may also be found personally liable for their active participation in the tort, even though they do not personally benefit thereby.”) (citations omitted); Trail Clinic, P.C. v. Bloch, 114 Mich.App. 700, 319 N.W.2d 638, 642 (1982) (“This Court has held that where a defendant acts on his own behalf or as an officer or agent of a corporation he is personally liable for the torts in which he actively participated.”) (citations omitted). The personal liability of a corporate officer “is not a question of piercing the corporate veil.” Ankersen, 385 N.W.2d at 673.
Thus, in Citizens, the court held that a company president, sued by an insurance company for failing to return an overpayment, could be held personally hable for the amount converted because he had actively participated in the conversion. Citizens Ins., 444 N.W.2d at 213. Similarly, in Trial Clinic, the court held that a director and shareholder of a medical clinic could be held personally hable for converting reimbursement checks, because the evidence estabhshed that he had actively assisted with the conversion and “acted either in behalf of one of the companies he was associated with or for his own interest.”[6] Trail Clinic, 319 N.W.2d at 642. Here, Olympic alleges that Cooper actively participated in the torts of conversion, fraud, and civil conspiracy. Olympic claims that Cooper was personally involved in converting hundreds of thousands of dollars in proceeds from the motorcycle sale and misrepresented that he would pay Swathmore this money within ten days of Swathmore fronting the money for the deal. Indeed, Cooper has admitted that it was his “sole decision” not to pay Swath- *268 more the money it was owed. The record, viewed in the light most favorable to Olympic, reflects that on April 17, 2000, Wolverine and IVI invoiced DWD and Swathmore, via 11 invoices, a total of $204,750 for 11 Harley Davidson motorcycles. On April 25, 2000, Swathmore was invoiced for another 12 motorcycles in the amount of $216,500. Swathmore wire-transferred payment for these invoices to Wolverine on April 27, 2000.
When Wolverine and/or IVI failed to remit payments owed to Swathmore under the resale agreement, Barrie Kurdzeil, a representative of Swathmore, contacted Johnny Cooper by telephone. Cooper acknowledged that Wolverine and IVI were long overdue in returning these funds to Swathmore and DWD. Cooper also stated that he had used the funds in other deals several times since completing the motorcycle deal. Cooper claimed that, pursuant to a business plan he had developed for Wolverine, DWD agreed to have the proceeds from the motorcycle deal reinvested, although there is nothing in writing to that effect.
Despite Cooper’s assurances that the funds would be forwarded, he paid Swath-more/DWD only $77,000. Swath-more/DWD is owed over $350,000 (the cost of the motorcycles less $77,000) plus profits. Cooper claims that he stopped repaying Swathmore/DWD when he began contemplating legal action against DWD, which he believed was “poaching Wolverine’s employees and using the business plan developed by Cooper (for Wolverine) to set up a competing business.” Def's Br. at 4. Within six months of the motorcycle transaction, Cooper negotiated the sale of his businesses to Adesa Importation Services, Inc. (“Adesa”). The proceeds that Wolverine and IVI grossed from the sale were used to repay outstanding bank loans and secured creditors, and the remaining monies were used to pay their accounts payable (trade creditors). Cooper was $500,000 short in its ability to pay all of the trade creditors, including the debt to Swathmore/DWD. Cooper never received any money from the sale of his businesses to Adesa. Viewed in the light most favorable to Olympic, these facts arguably suggest that Cooper actively participated in the torts of conversion, fraud, and civil conspiracy to defraud, the last of which claims Olympic no longer pursues. In particular, these facts could support a reasonable fact-flnder’s inference that Cooper had the specific intent to defraud. The majority reaches a contrary conclusion by engaging in fact-finding of its own. It is not for us to decide whether Cooper had the intent to defraud; our charge is limited to determining whether a reasonable jury could so find. Because on this record a reasonable jury could find in Olympic’s favor, the fraud and conspiracy claims should proceed to trial.
Accordingly, I submit that the district court erred in dismissing the fraud and civil conspiracy claims with respect to Cooper individually. I therefore part ways with my colleagues; I would reverse the district court’s grant of summary judgment to Cooper on Olympic’s fraud and civil conspiracy claims and would remand the case for trial on those claims.

. The majority suggests Citizens and Trail Clinic are irrelevant to the case at bar because they involved conversion claims. It should be clear from my discussion that I do not point out these cases for their treatment of the plaintiffs’ conversion claims, but rather because they illustrate a general principle of Michigan tort law, namely, that a corporate officer’s individual liability "is not a question of piercing the corporate veil.” Ankersen, 385 N.W.2d at 673.