*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* CONSERVATORSHIP OF JK.

---

HEATHER HAYEK, conservator,

        Petitioner-Appellee,

v

WILLIAM MICHAEL KAWA IV,

        Respondent-Appellant.

UNPUBLISHED
June 17, 2026
2:42 PM

No. 373855
Macomb Probate Court
LC No. 2024-248060-CA

---

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

Respondent challenges the probate court's order requiring him to repay funds improperly transferred from his mother, JK's, bank account into his own. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

JK has two adult children: respondent, William Michael Kawa IV, and petitioner, Heather Hayek. Kawa served as his mother's caretaker for several years, as her dementia rendered her progressively less able to care for herself or handle her finances. By late 2023, Hayek became concerned that Kawa was not providing JK adequate physical care, misappropriated funds from her bank accounts, and had improperly converted some of her assets. So, in 2024, Hayek successfully petitioned the probate court to appoint her as JK's conservator.

The ensuing probate-court proceedings were contentious, and Kawa repeatedly stymied Hayek's attempts to access JK's residence, account for her assets, and retrieve her property (some of which Kawa claimed as his own). Acting as conservator, Hayek eventually petitioned the probate court for an order compelling Kawa to, in relevant part, "return all funds that he converted for his own use or his business use." Hayek also asked the court to order Kawa to provide an accounting for a bank account in his and JK's names, into which Hayek believed someone acting on JK's behalf had deposited $87,406.53 in 2017. Kawa, for his part, claimed the account was

his; he added JK to the account in 2015 "for estate planning purposes"; and the 2017 deposit in question was a gift from JK, which she made of her own free will and while sound of mind.

The probate court held an evidentiary hearing on the petition, at which it received evidence and heard testimony from a longtime friend of JK, Hayek's husband, Hayek, and Kawa. Ultimately, the court found that the disputed deposit "was an act of conversion" and that JK was entitled to the return of those funds. It therefore ordered Kawa to return the money.[1] Kawa now appeals.

## II. ANALYSIS

### A. STATUTE OF LIMITATIONS

Kawa devotes most of his brief on appeal to argue that the three-year statute of limitations set forth in MCL 600.5805 barred Hayek's conversion claim, and the probate court erred to the extent it tolled the statute of limitations on the basis of fraudulent concealment under MCL 600.5855. A statute of limitations, however, is an affirmative defense that "must be raised in a party's first responsive pleading or by motion filed not later than [that] responsive pleading." *Attorney General ex rel Dep't of Environmental Quality v Bulk Petroleum Corp*, 276 Mich App 654, 664; 741 NW2d 857 (2007), citing MCR 2.111(F)(2) and (3). See also MCR 5.001(B)(2) ("References to 'pleadings' in the Michigan Court Rules also apply to petitions, objections, and claims in probate court proceedings."). Failure to do so constitutes a waiver of the affirmative defense. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 753; 880 NW2d 280 (2015).

Here, Kawa waived his statute-of-limitations defense by raising it for the first time at the evidentiary hearing, rather than in the response he filed to the petition from which this appeal arises. The probate court thus properly concluded the conversion claim was not time barred, albeit for a different reason (i.e., tolling). "It is axiomatic that we will not reverse when the probate court has reached the right result, even if it has done so for the wrong reasons." *In re Estate of Stan*, 301 Mich App 435, 448; 839 NW2d 498 (2013). Accordingly, Kawa is not entitled to relief on statute-of-limitations grounds.[2]

### B. CONVERSION FINDINGS

Kawa further argues the probate court erred to the extent it found that he engaged in common-law conversion relative to the 2017 deposit. We disagree.

This Court reviews the probate court's factual findings for clear error. *In re Conservatorship of Brody*, 321 Mich App 332, 336; 909 NW2d 849 (2017). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* (quotation marks and citation

---

[1] The evidentiary hearing and probate court's ensuing order involved the resolution of additional claims that Kawa does not challenge on appeal.

[2] In light of this conclusion, we need not address the merits of Kawa's fraudulent-concealment arguments.

omitted). "We defer to the probate court on matters of credibility," giving "broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Conservatorship of Murray*, 336 Mich App 234, 240; 970 NW2d 372 (2021) (quotation marks and citation omitted).

There are two distinct forms of conversion: common law and statutory. *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 339-340, 361; 871 NW2d 136 (2015). Though the record is unclear regarding which supported the probate court's conversion findings, Kawa's appellate brief only addresses common-law conversion. Because he has abandoned any statutory-conversion argument by failing to brief it, *Tyra v Organ Procurement Agency of Mich*, 498 Mich 68, 88; 869 NW2d 213 (2015), we focus only on common-law conversion.

"Under the common law, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines*, 497 Mich at 346 (quotation marks and citations omitted). Money can constitute real property for purposes of conversion. *Dunn v Bennett*, 303 Mich App 767, 778; 846 NW2d 75 (2013). However, it must have been obtained "without the owner's consent to the creation of a debtor and creditor relationship." *Citizens Ins Co of America v Delcamp Truck Ctr, Inc*, 178 Mich App 570, 575; 444 NW2d 210 (1989). And on review of the record, we are not left with a definite and firm conviction the probate court was mistaken to the extent it found that Kawa converted funds from JK's bank account.

There is no dispute someone transferred $87,406.53 from JK's account into an account belonging to Kawa (but also bearing JK's name). According to Kawa, JK gifted him that money in the interest of fairness after Hayek failed to repay a $100,000 loan JK previously gave her. Testimony from both Hayek and a friend of JK, however, undermined this claim.

To be sure, both testified that JK would not have given something to one of her children and not the other, and Hayek confirmed her receipt of the $100,000 loan. But each expressed disbelief that JK gifted Kawa the money in question. And while Kawa claimed JK gifted him the $87,406.53 to use for his own purposes (i.e., to purchase commercial property for his business), Hayek testified that the previous $100,000 loan had been for a cottage all three regularly used. What is more, Hayek claimed that she and Kawa had been treated equally in accordance with JK's practice and preferences on the previous loan: in keeping with an arrangement between the three of them, Hayek paid Kawa approximately half of the loan amount in lieu of repaying JK. Hayek insisted she would have known about any monetary gift JK gave Kawa, because the three discussed "every penny"—including, for example, the $100,000 loan (which they all discussed before JK gave it to Hayek). Had JK gifted Kawa the $87,406.53, Hayek claimed, "[i]t wouldn't have been a secret."

The deposit slip accompanying the transfer, likewise called into question Kawa's testimony that he and JK were "probably there together" when the transfer occurred. Though the deposit slip bore JK's name, Kawa admitted that the address listed on the slip belonged instead to his fiancé. He offered no explanation for this discrepancy beyond their addresses being "close." And after providing equivocal testimony regarding how they completed the transfer and who filled out the accompanying deposit slip, Kawa admitted the handwriting on it appeared to be his own. Though

he insisted that he "couldn't just take" the money himself because he was not a "signer" on JK's source account, no other evidence at the evidentiary hearing corroborated that claim.

With these competing factual recitations, the probate court's determination regarding whether Kawa wrongfully asserted dominion and control over the $87,406.53 rested largely on a credibility contest between Hayek and Kawa. The court resolved that contest in Hayek's favor, expressly finding Kawa's testimony "not credible" and "self-serving." That is a credibility determination to which we owe deference, *Conservatorship of Murray*, 336 Mich App at 240, and we see no reason in the record to disturb it. Considering Hayek's testimony and the deposit slip (together with Kawa's admission that it bore his handwriting), the probate court did not clearly err by finding that Kawa improperly transferred the $87,406.53 from JK's account to his own.

Disagreeing, Kawa relies solely on his "wholly uncontradicted" testimony that he was not a signatory to JK's account and therefore could not transfer the money without her involvement. He provides, however, no authority for his apparent proposition that a fact finder must accept as true unrebutted—but also uncorroborated—testimony that it finds incredible. See *In re Temple Marital Trust*, 278 Mich App 122, 139; 748 NW2d 265 (2008) ("An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims."). Deferring to the probate court's determination that Kawa's testimony lacked credibility, there is simply no indication in the record that Kawa needed JK's participation to effectuate the transfer, nor that JK knew he transferred the $87,406.53 in question.

### III. CONCLUSION

For these reasons, we affirm the probate court's order requiring Kawa to return the funds.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock

-4-