NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0603n.06
Filed: July 15, 2005

No. 04-1819

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

OLYMPIC FOREST PRODUCTS, LTD.,

    Plaintiff-Appellant,

v.

JOHNNY COOPER, et al.,

    Defendants-Appellees.

_____/

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**OPINION**

**Before: CLAY and SUTTON, Circuit Judges; REEVES, District Judge.**[*]

**DANNY C. REEVES, District Judge.** Plaintiff-Appellant Olympic Forest Products, Ltd. ("Olympic") appeals the district court's final judgment. For the reasons that follow, we **AFFIRM** the judgment of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the alleged tortious acts of Defendant-Appellee Johnny Cooper ("Cooper") and the entities of which he was the former President and sole owner, Wolverine Auto Purchasing, Inc. ("Wolverine") and International Vehicle Importers, Inc. ("IVI").

---

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Wolverine was engaged in the business of buying and reselling vehicles, and IVI was in the business of importing vehicles into the United States. At the time of the transactions involved in this litigation, Cooper ran all operations at Wolverine.

Olympic is the assignee and affiliate of Swathmore Auto Group ("Swathmore"). During the relevant time period, Swathmore was in the business of importing vehicles from Canada to the United States for resale. The business was operated, in part, through a nominee corporation: Dealers Wholesale Depot Company ("DWD").

In April 2000, Cooper represented to DWD and Swathmore that Cooper, Wolverine and/or IVI were able to purchase twenty-three new Harley Davidson Motorcycles and resell them to an Arizona Dealership at a profit of at least $400.00 per motorcycle, with a ten day turn-around. Based on these representations, Swathmore and DWD agreed to purchase the motorcycles and complete the proposed resale. Wolverine invoiced Swathmore and DWD for eleven motorcycles (a total of $204,750.00) on April 17, 2000, and twelve motorcycles (a total of $216,500.00) on April 25, 2000. Pursuant to these invoices, Swathmore transferred $421,250.00 to Wolverine's bank account. Subsequently, IVI imported the motorcycles. Wolverine then sold them to an Arizona dealership.

Wolverine did not immediately pay the net proceeds of the motorcycles, plus the agreed profits, to Swathmore or DWD. Instead, some months later, Wolverine paid Swathmore a total of $77,000.00 in four installments (for four motorcycles). Cooper acknowledged that it was his decision not to pay the remainder of the sums due to Swathmore and DWD.

Within six months of the transaction, Wolverine and IVI sold substantially all of their assets to Adesa Importation Services, Inc. ("Adesa"). At closing, which occurred on December 21, 2000, Wolverine and IVI received $2.5 million from Adesa. Of this amount, $1.4 million was paid to secured creditors and the balance was paid to trade creditors. Olympic contends that approximately $500,000.00 of trade debt – including the monies owed to DWD and Swathmore – was left unpaid. The Defendants-Appellees concede that Wolverine owes Olympic money.

On October 30, 2001, Olympic filed suit against Cooper, IVI, Wolverine, Adesa and Robert Bolenbaugh (a salesman for Wolverine). Subsequently, Adesa and Bolenbaugh were dismissed by agreement. On July 15, 2002, Cooper moved for summary judgment with respect to all claims asserted against him. He argued that, as a corporate officer, he was shielded from liability and that a statutory conversion claim could not attach to him. On March 14, 2003, the district court granted Cooper's motion. Specifically, it concluded that Olympic had not produced sufficient evidence to hold Cooper personally liable. In addition, the district court found that Olympic had only pled a claim of statutory conversion and had failed to present evidence to support this claim against Cooper. Olympic then filed a motion to reconsider, arguing that the district court improperly applied the corporate shield defense to the claims against Cooper and improperly dismissed its conversion claim. Specifically, Olympic asserted that it had alleged both a statutory *and* common law conversion claim and that the court failed to address the viability of its common law claim. The district court denied this motion.

Based on admissions made by Cooper, Olympic then moved for summary judgment against Wolverine and IVI. The district court ultimately granted this motion after both entities

failed to respond. The resulting judgment effectively brought the case to an end below and this appeal followed.[1]

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*. *Martin v. Indiana Michigan Power Co.,* 381 F.3d 574, 578 (6th Cir. 2004). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## DISCUSSION

Olympic contends that the district court erred in finding as a matter of law that Cooper was shielded by the corporate veil. It asserts that this action should be remanded so that it may proceed against Cooper on claims of conversion, fraud and civil conspiracy.[2] In response, the Defendants argue that the district court properly dismissed Cooper because Olympic failed to

---

[1]    Olympic's appeal relates only to the dismissal of its claims against Cooper.

[2]    Olympic also asserts that the district court improperly dismissed its conversion claim, arguing that the court failed to consider the viability of a common law claim of conversion. The Defendants argue that Olympic did not allege a common law claim in its complaint. Therefore, they assert that the court properly dismissed this claim inasmuch as Olympic failed to present sufficient evidence to sustain the only claim alleged ( *i.e.*, the statutory conversion claim).

present sufficient evidence to pierce the corporate veil.  Alternatively, they contend that even if the district court erred, this Court should affirm the dismissal of Olympic's claims against Cooper because there is insufficient evidence in the record to create a genuine issue of material fact with respect to the conversion, fraud and civil conspiracy claims.

### A.　Piercing the Corporate Veil

In dismissing Olympic's claims against Cooper, the district court concluded that Cooper was not liable for the acts of the corporate Defendants.  Specifically, the court concluded that Olympic failed to offer evidence that would support piercing the corporate veil and holding Cooper personally liable for the acts of Wolverine and IVI.  In support of its position that the district court erred, Olympic contends that Cooper should not have been dismissed because he personally participated in the wrongful conduct.

The law treats a corporation as an entirely separate entity from its stockholders, even where only one person owns all the corporation's stock.  *Foodland Dist. v. Al-Naimi*, 559 N.W.2d 379 (Mich. App. 1996).  As a general rule, shareholders, directors and officers of a corporation cannot be held personally liable for the corporation's acts or debts, unless unusual circumstances justify disregarding the corporate entity.  *Bitar v. Wakim*, 572 N.W.2d 191 (Mich. 1998).  However, where the corporate fiction is used to subvert justice, the corporate identity may be ignored.  *Id*.  This concept is commonly referred to as piercing the corporate veil and is typically used "to protect a corporation's creditors . . . when there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate entity in

-5-

an attempt to avoid legal obligations." *Allstate Ins. Co. v. Citizens Ins. Co.*, 325 N.W.2d 505, 508 (Mich. App. 1982).

Under Michigan law, the following elements must be satisfied in order to pierce the corporate veil:

> First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff.

*SCD Chemical Dist., Inc. v. Medley*, 512 N.W. 2d 86 (Mich. App. 1994). It should also be noted that when corporate officials participate individually in fraudulent or tortious conduct, they may be held personally responsible, regardless of whether they are acting on their own behalf or on behalf of the corporation. *Attorney General v. Ankersen*, 385 N.W.2d 658 (Mich. App. 1986).

Here, the district court held that Olympic failed to present sufficient evidence to pierce the corporate veil. Specifically, the court held that Olympic had not demonstrated that "Cooper used his corporations as a mere instrumentality to suit his own improper purposes." Further, it noted that there was no evidence indicating that Cooper ignored corporate formalities or blurred the distinction between the corporations and himself.

Although the district court did not specifically address whether Cooper personally engaged in fraudulent or illegal activity, it is apparent from the record that the evidence was insufficient regarding this issue. In support of its position that Cooper engaged in fraudulent or wrongful conduct, Olympic states that "Cooper admitted that he personally engaged in the concealment of money he knew to belong to Olympic." (Appellant's Br. at 16-17). However, after examining the portions of the record cited by Olympic, it does not appear that Cooper

-6-

admitted to *concealing* money that belonged to Olympic. Rather, Cooper acknowledged that a debt was owed to Olympic and that there were insufficient funds to pay it.[3] This is the only evidence cited by Olympic to support its contention that Cooper personally engaged in fraudulent or illegal activity. And, based on this evidence, we cannot conclude that there is sufficient evidence of fraudulent or wrongful conduct to impose personal liability on Cooper. As noted by the district court, "the mere fact that Defendant Cooper made a business decision not to pay a debt does not indicate that he was using his companies as a mere instrumentality." Likewise, the fact that Cooper decided not to pay the monies owed to Wolverine and/or IVI does not indicate that he actively engaged in the concealment of money. Thus, the district court did not err in finding there was insufficient evidence to pierce the corporate veil and impose personal liability on Cooper.

However, even if the district court erred in its piercing the corporate veil analysis, Olympic has not suffered any prejudice inasmuch as there is insufficient evidence to create a genuine issue of material fact with respect to the alleged conversion, fraud and civil conspiracy claims.

*B.      Conversion*

The district court concluded that Olympic had only pleaded a claim for statutory conversion and had failed to present sufficient evidence to sustain this claim. Olympic contends,

---

[3]      Cooper testified that his initial reason for not paying the debt was that he had intended to sue Olympic for its alleged attempts to "steal" Wolverine's employees. He indicated that he elected to pay other creditors because he believed that the monies owed to Olympic would be offset by the future judgment against it. Although Cooper's rationale for not paying the money may have been unreasonable, it appears that Cooper simply made a business decision to pay other creditors before Olympic. Contrary to the representations made by Olympic, Cooper did not admit that he personally engaged in the *concealment* of money that he knew belonged to Olympic.

-7-

however, that it also pleaded a cause of action for common law conversion and that the district court failed to consider the viability of this claim. We agree with the district court's conclusion that Olympic only pleaded a statutory conversion claim and did not produce evidence to create a material issue of fact regarding this issue.

Count II of the Complaint sets forth Olympic's conversion claim. This Count provides, in relevant part, that:

22. Olympic hereby incorporates its allegations contained in paragraphs 1 through 21 as if set forth herein in their entirety.

23. Cooper, Bolenbaugh, Wolverine and/or IVI wrongfully converted and/or stole at least $344,250 of funds belonging to Swathmore.

24. Pursuant to M.C.L. 600.2919a, Olympic (as Swathmore's assignee) may recover three times the amount of actual damages sustained . . . plus reasonable costs and fees.

The clear language of the relevant section of the Complaint does not allege a claim for common law conversion. Instead, the Complaint specifically references the statutory section applicable to conversion. Further, in paragraph 24, Olympic demands treble damages, which is derived from M.C.L. § 600.2919a.

Additionally, Olympic's failure to address the viability of a common law conversion claim in response to Cooper's motion for summary judgment is a further indication that it never intended to proceed against Cooper under that claim. In his motion, Cooper sought a judgment in its favor on all claims, specifically addressing the issue of statutory conversion. In opposing the motion, Olympic never asserted that Cooper failed to address its separate common law

conversion claim. For these reasons, we agree with the district court and conclude that Olympic failed to allege a claim based upon common law conversion.

Apart from the current claim based on Michigan common law, the district court was also correct in concluding that Olympic failed to present sufficient proof to support its claim of statutory conversion. In Michigan, a statutory claim of conversion consists of knowingly buying, receiving, or aiding in the concealment of stolen, embezzled, or converted property. M.C.L. § 600.2919a. The Michigan courts have held that simply retaining a particular item or sum does not amount to "buying, receiving or aiding in the concealment of stolen, embezzled or converted property." *Lawsuit Financial v. Curry*, 683 N.W.2d 233 (Mich. App. 2004) (citing *Hovanesian v. Nam*, 539 N.W.2d 557 (Mich. App. 1995)). In this case, Olympic contends that it gave money to the Defendants-Appellees and they, in turn, failed to give it back in accordance with the terms of the contract. Such allegations are insufficient to support a statutory conversion claim.

### C. Fraud

Likewise, while the record may support a claim for breach of contract, it does not support a corresponding claim of fraud. In *Crews v. General Motors Corp.*, 253 N.W.2d 617 (Mich. 1977), the Michigan Supreme Court held that a tort action will not lie based solely on nonperformance of a contractual duty. Under the contract in issue in this case, the parties agreed that Olympic (or its affiliates) would transfer money to the Defendants for the purchase of motorcycles. In turn, the Defendants agreed to resell the motorcycles and pay Olympic the proceeds, plus any net profits. It is undisputed that the sole factual allegation of misconduct

supporting Olympic's claims is that the Defendants failed to re-pay all of the money owed to Olympic pursuant to their agreement. As such, the contract between the parties is the sole source of any duty that the Defendants owed to Olympic. Under these circumstances, Olympic cannot maintain an action for fraud separate from the breach of contract claim.[4]

While the dissent asserts that the district court erred in dismissing Olympic's fraud claim against Cooper based on his individual actions, it is apparent that the evidence presented by Olympic does not support such a claim. No evidence was presented that Cooper knew at the time his company contracted with Swathmore/DWD that payments would not be made pursuant to their agreement. And again, while his subsequent decision to withhold such payments may constitute a breach of contract on behalf of the company, it is axiomatic that not every breach of contract constitutes a claim for fraud. The fact that Wolverine and IVI used monies received from the subsequent sale of the business to pay secured and trade creditors rather than Swathmore/DWD does not alter this analysis. Here, the fraud claim against Cooper fails for lack of proof under Rule 56 of the Federal Rules of Civil Procedure.[5]

D.    *Civil Conspiracy*

---

[4]    Although the Michigan courts have held that a plaintiff may pursue a claim of fraud in the inducement extraneous to an action for breach of contract, Olympic has not alleged that the Defendants-Appellees made misrepresentations to induce Olympic into entering into this contract. *See e.g.*, *Huron Tool and Engineering Co. v. Precision Consulting Services, Inc.*, 532 N.W.2d 541, 546 (Mich. App. 1995).

[5]    Neither *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.,* 444 N.W.2d 210, 213 (Mich. Ct. App. 1989), nor *Trail Clinic, P.C. v. Bloch*, 319 N.W.2d 638, 642 (Mich. Ct. App. 1982), alters this analysis. Both cases discuss individual liability for conversion. Where, as here, the conversion claim was properly dismissed – as the dissent concedes – the claim may not be revived by simply calling it fraud or civil conspiracy. These are separate and distinct claims with separate and distinct elements that must be alleged and supported by relevant evidence if summary judgment is to be avoided.

Inasmuch as Olympic failed to allege facts to support claims for conversion and fraud, the civil conspiracy claim likewise fails. *See Magid v. Oak Park Racquet Club Associates, Ltd.*, 269 N.W.2d 661, 664 (Mich. App. 1978) (an allegation of conspiracy, standing alone, is not actionable).

## CONCLUSION

We **AFFIRM** the judgment of the district court.

**CLAY, Circuit Judge,** concurring in part and dissenting in part. I concur in the majority opinion insofar as it affirms summary judgment in Cooper's favor on Olympic's conversion claim. That claim was properly dismissed because the most reasonable interpretation of Olympic's complaint is that it alleges only a claim of statutory conversion and Olympic does not contest the dismissal of its claim for statutory conversion. As to the fraud and civil conspiracy claims, however, I must respectfully dissent because in my view there are genuine issues of material fact such that a trial on those claims is required. Fed. R. Civ. P. 56. In particular, it is my view that Cooper may be held individually liable for the torts of the entities that he represented in an official capacity (Wolverine and IVI). Furthermore, regardless of whether Cooper can be held liable for Wolverine's and IVI's tortious conduct, he can be held liable for tortious conduct in which he actively participated. In other words, the majority's veil-piercing analysis does not, as its opinion suggests, resolve this case.

We review *de novo* a district court's decision to grant summary judgment. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001). Summary judgment must be granted if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute over a material fact is only a "genuine issue" if a reasonable jury could find for the nonmoving party on that issue. *Cockrel*, 270 F.3d at 1048 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing the district court's grant of summary judgment, this Court must view all the facts and the inferences drawn therefrom in the light most favorable

to the nonmoving party. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Generally, the denial of a motion to reconsider is reviewed for an abuse of discretion. *Northland Ins. Co. v. Stewart Title Guar. Co.,* 327 F.3d 448, 454 (6th Cir. 2003) (citing *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 832 (6th Cir.1999)). However, when a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, this Court conducts a *de novo* review using the same legal standard employed by the district court. *Id.* at 454-55 (citing *Smith v. Wal- Mart Stores, Inc.,* 167 F.3d 286, 289 (6th Cir. 1999); *Columbia Gas Transmission, Corp. v. Limited Corp.,* 951 F.2d 110, 112 (6th Cir. 1991)).

The district court granted Defendant Cooper summary judgment on Olympic's claims for breach of contract, conversion, fraud, civil conspiracy, and constructive trust on the ground that Cooper was an officer of Wolverine and IVI, and Olympic had failed to allege facts showing that it was appropriate to pierce these entities' corporate veils in order to hold Cooper liable for their actions. The district court, however, construed Plaintiff's complaint too narrowly and the majority has now repeated the error. A fair reading of the complaint shows that Olympic seeks to impose liability not only on Wolverine and IVI, but on Cooper personally for his own actions. The allegations concerning breach of contract, conversion, fraud, civil conspiracy, and constructive trust make no distinction between Cooper's capacity as a representative of Wolverine and IVI and his personal capacity. Accordingly, even accepting the district court's conclusion, adopted by the majority here, that veil-piercing is inappropriate to hold Cooper liable

-13-

for Wolverine and IVI's actions, this holding would not preclude Olympic from seeking to impose liability on Cooper for his own actions.

Michigan law clearly distinguishes between a corporate officer's liability for his own tortious conduct and the ability to hold a corporate officer liable for the actions of the corporation through veil-piercing. The Michigan Court of Appeals has held that "[i]t is beyond question that a corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation." *Attorney General v. Ankersen*, 385 N.W.2d 658, 673 (Mich. Ct. App. 1986) (citations omitted); *see also Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 444 N.W.2d 210, 213 (Mich. Ct. App. 1989) ("When conversion is committed by a corporation, the agents and officers of the corporation may also be found personally liable for their active participation in the tort, even though they do not personally benefit thereby.") (citations omitted); *Trail Clinic, P.C. v. Bloch*, 319 N.W.2d 638, 642 (Mich. Ct. App. 1982) ("This Court has held that where a defendant acts on his own behalf or as an officer or agent of a corporation he is personally liable for the torts in which he actively participated.") (citations omitted). The personal liability of a corporate officer "is not a question of piercing the corporate veil." *Ankersen*, 385 N.W.2d at 673.

Thus, in *Citizens*, the court held that a company president, sued by an insurance company for failing to return an overpayment, could be held personally liable for the amount converted because he had actively participated in the conversion. *Citizens Ins.*, 444 N.W.2d at 213. Similarly, in *Trial Clinic*, the court held that a director and shareholder of a medical clinic could

be held personally liable for converting reimbursement checks, because the evidence established that he had actively assisted with the conversion and "acted either in behalf of one of the companies he was associated with or for his own interest."[6] *Trail Clinic*, 319 N.W.2d at 642. Here, Olympic alleges that Cooper actively participated in the torts of conversion, fraud, and civil conspiracy. Olympic claims that Cooper was personally involved in converting hundreds of thousands of dollars in proceeds from the motorcycle sale and misrepresented that he would pay Swathmore this money within ten days of Swathmore fronting the money for the deal. Indeed, Cooper has admitted that it was his "sole decision" not to pay Swathmore the money it was owed. The record, viewed in the light most favorable to Olympic, reflects that on April 17, 2000, Wolverine and IVI invoiced DWD and Swathmore, via 11 invoices, a total of $204,750 for 11 Harley Davidson motorcycles. On April 25, 2000, Swathmore was invoiced for another 12 motorcycles in the amount of $216,500. Swathmore wire-transferred payment for these invoices to Wolverine on April 27, 2000.

When Wolverine and/or IVI failed to remit payments owed to Swathmore under the resale agreement, Barrie Kurdzeil, a representative of Swathmore, contacted Johnny Cooper by telephone. Cooper acknowledged that Wolverine and IVI were long overdue in returning these funds to Swathmore and DWD. Cooper also stated that he had used the funds in other deals several times since completing the motorcycle deal. Cooper claimed that, pursuant to a business

---

[6] The majority suggests *Citizens* and *Trail Clinic* are irrelevant to the case at bar because they involved conversion claims. It should be clear from my discussion that I do not point out these cases for their treatment of the plaintiffs' conversion claims, but rather because they illustrate a general principle of Michigan tort law, namely, that a corporate officer's individual liability "is not a question of piercing the corporate veil." *Ankersen*, 385 N.W.2d at 673.

-15-

plan he had developed for Wolverine, DWD agreed to have the proceeds from the motorcycle deal reinvested, although there is nothing in writing to that effect.

Despite Cooper's assurances that the funds would be forwarded, he paid Swathmore/DWD only $77,000. Swathmore/DWD is owed over $350,000 (the cost of the motorcycles less $77,000) plus profits. Cooper claims that he stopped repaying Swathmore/DWD when he began contemplating legal action against DWD, which he believed was "poaching Wolverine's employees and using the business plan developed by Cooper (for Wolverine) to set up a competing business." *Def's Br.* at 4. Within six months of the motorcycle transaction, Cooper negotiated the sale of his businesses to Adesa Importation Services, Inc. ("Adesa"). The proceeds that Wolverine and IVI grossed from the sale were used to repay outstanding bank loans and secured creditors, and the remaining monies were used to pay their accounts payable (trade creditors). Cooper was $500,000 short in its ability to pay all of the trade creditors, including the debt to Swathmore/DWD. Cooper never received any money from the sale of his businesses to Adesa. Viewed in the light most favorable to Olympic, these facts arguably suggest that Cooper actively participated in the torts of conversion, fraud, and civil conspiracy to defraud, the last of which claims Olympic no longer pursues. In particular, these facts could support a reasonable fact-finder's inference that Cooper had the specific intent to defraud. The majority reaches a contrary conclusion by engaging in fact-finding of its own. It is not for us to decide whether Cooper had the intent to defraud; our charge is limited to determining whether a reasonable jury could so find. Because on this record a reasonable jury could find in Olympic's favor, the fraud and conspiracy claims should proceed to trial.

-16-

Accordingly, I submit that the district court erred in dismissing the fraud and civil conspiracy claims with respect to Cooper individually. I therefore part ways with my colleagues; I would reverse the district court's grant of summary judgment to Cooper on Olympic's fraud and civil conspiracy claims and would remand the case for trial on those claims.