**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 00-11270
_____


AMERISTAR JET CHARTER, INC.,

                              Plaintiff-Counter Defendant-Appellee,


                         versus

SIGNAL COMPOSITES, INC., ETC; ET AL,

                                        Defendants,

SIGNAL COMPOSITES, INC. D/B/A SIGNAL AEROSPACE,

                  Defendant-Counter Claimant-Appellant.


_____

           Appeal from the United States District Court
               for the Northern District of Texas
_____

                    November 13, 2001

Before GARWOOD and WIENER, Circuit Judges and CLEMENT,[*] District
Judge.

CLEMENT, District Judge:

     Defendant Signal Composites, Inc. d/b/a Signal Aerospace
("Signal") appeals the district court's grant of partial summary
judgment in favor of Ameristar Jet Charter, Inc. ("Ameristar") on
Ameristar's breach of warranty claim.  Because several issues of

---

     [*]   Chief Judge of the Eastern District of Louisiana, sitting
by designation.

material fact exist, we reverse the district court's decision and remand for further proceedings consistent with this opinion.


I.

FACTS AND PROCEEDINGS

Ameristar is a commercial jet charter service that operates a fleet of approximately 20 aircraft. In 1997, Ameristar entered into a business arrangement with 3D Industries ("3D") to procure airplane combustion liners. Ameristar agreed to finance the venture, and 3D would locate and purchase the liners. Under Federal Aviation Administration ("FAA") guidelines, only General Electric Corporation ("GE") or GE-approved companies are authorized to manufacture combustion liners for commercial aircraft. 3D obtained liners from Signal, an airline parts distributor that originally bought the liners from Masbe Corporation ("Masbe"), a Taiwanese company not approved by GE.

Between August and November 1997, Signal delivered 120 inner and outer liner sets and 14 individual outer liners to 3D, which passed them on to Ameristar. The liners looked like GE parts and were stamped with a GE manufacturer's code. Ameristar did not use these liners in its own jets, but commissioned 3D to resell them to third parties. In February or March 1998, the FAA approached Ameristar with suspicions that the liners were not suitable for use in commercial aircraft. Ameristar continued to sell the liners until March 1998 and notified Signal that it believed the liners

2

were counterfeit on April 30, 1998. Because the liners are not commercial GE parts, the district court found that Signal breached the warranty of merchantability and granted partial summary judgment in favor of Ameristar, awarding more than $1.1 million in damages.[1]

## II.

### ANALYSIS

A. Standard of Review

We review a grant of summary judgment de novo, applying the same standard as the district court. *See* Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact. *See* Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is material if its resolution could affect the outcome of the action. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether an issue of fact exists, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the

---

[1] The district court referred Ameristar's summary judgment motion to a magistrate judge and adopted the magistrate's report and recommendation without comment. Left for future disposition were Ameristar's claims against Signal, Stehr and Durrani for conspiracy and common law fraud. These claims were subsequently dismissed without prejudice or severed, so that the judgment on the breach of warranty claim became final.

nonmoving party.  *See* Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

In granting summary judgment in favor of Ameristar, the district court found (1) that Signal is a merchant subject to Texas' warranty of merchantability, (2) that Signal breached the warranty by falsely representing the liners to be commercial GE parts, and (3) that Ameristar timely notified Signal of the breach. Signal challenges each of these determinations and also disputes the district court's calculation of damages.  In addition, Signal appeals two of the district court's evidentiary rulings and its refusal to award attorneys' fees in connection with Ameristar's failed claim under Texas' Deceptive Trade Practices Act.

## B.   Breach of Warranty

Under Texas law the warranty of merchantability is implied in every transaction for the sale of goods if the seller is a merchant of goods of that type.  *See* Hininger v. Case Corp., 23 F.3d 124, 128 (5th Cir. 1994) (citing TEX. BUS. & COM. CODE § 2.314(a)). Section 2.104 of the Texas Business and Commercial Code provides that a "merchant" is:

> a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

4

TEX. BUS. & COM. CODE § 2.104. In Nelson v. Union Equity Coop. Exchange, 548 S.W.2d 352, 357 (Tex. 1977), the Texas Supreme Court expansively construed the definition of merchant under the code as "intended to apply to all but the most casual or inexperienced sellers."

Signal contends that it is solely a merchant of military aircraft parts and, as such, may not be held liable for failing to provide suitable commercial parts. The distinction between military and commercial aircraft parts is based on highly technical differences of which Signal is well aware, and as a sophisticated distributor Signal is clearly not such a casual seller that it would not have known the importance of these differences to buyers. Accordingly, the district court correctly held Signal to be a merchant of airline parts, without regard to the distinctions between military and commercial merchandise.

Having concluded that Signal is a merchant, the district court found that it breached the implied warranty of merchantability by falsely labeling the liners as GE parts. The label at issue is the number "99207," which was stamped on the liners as the manufacturer's identification code. GE representative Thomas Woo testified at a deposition that "99207" signifies one of two things: (1) that the part was manufactured by GE at its plant in Lynn, Massachusetts, or (2) that the part was manufactured pursuant to a design which originated at that facility.

Signal does not dispute the district court's finding that the liners were not commercial GE parts. However, Signal contends that it did not agree to supply Ameristar with commercial parts, that 3D represented Ameristar as a willing investor in military parts, and that Ameristar did in fact receive military parts. We do not find that Signal's position is contradicted by the record.

First, aside from Ameristar's letter to Signal notifying it of the alleged breach of warranty, there is no evidence of any communication between Signal and Ameristar. Therefore, there is no support for Ameristar's allegation that Signal promised to deliver commercial GE liners.

Second, in June 1997, 3D advised Signal that "Our investor is cool in investing in J85 parts that aren't compatible with 610 parts, so I guess we can say that we will back you on your Sabreliner deal but only for 610 parts." Although the meaning of this statement is unclear, Signal interprets 3D to say that Ameristar was willing to invest in non-commercial parts. Even though the summary judgment record does not contain evidence that Ameristar knew of 3D's communication or was in fact "cool" in making the investment, this interpretation bolsters Signal's theory that Ameristar knew it was purchasing military liners.

Third, although the district court found that the liners were not commercial GE parts, there is no evidence that the liners were not in fact military GE parts. In her report and recommendation, the magistrate judge noted that "[w]hen questioned by Signal's

6

counsel regarding the testing of the liners, Woo acknowledged that he compared them with a GE drawing for a commercial liner rather than a military liner."  In light of the absence of evidence to resolve these factual disputes, we find that the question of whether Signal breached the warranty of merchantability should not have been decided on summary judgment.

Finally, even if the liners were in fact unmerchantable, Signal challenges the district court's determination that Ameristar provided timely notice of the alleged defect.  Under Texas law, when a buyer has accepted goods, it must notify the seller "within a reasonable time after it discovers or should have discovered any breach or be barred from any remedy."  TEX. BUS. & COM. CODE § 2.607(c)(1).  The notice provisions of the Texas Code are liberally construed, and whether notice is adequate depends on the reasonableness of buyers' efforts to communicate their dissatisfaction in light of all the circumstances.  *See* Reynolds Metals Co. v. Westinghouse Elec. Corp., 758 F.2d 1073, 1078 (5th Cir. 1985).  Notice is ordinarily a question of fact and becomes a question of law "only where there is no room for ordinary minds to differ about the proper conclusion to be drawn from the evidence." Palmco Corp. v. American Airlines, Inc., 983 F.2d 681, 685 (5th Cir. 1993) (citing Carroll Instrument Co. v. B.W.B. Controls, 677 S.W.2d 654, 657 (Tex.App.–Houston [1st Dist.] 1984, no writ)).

In the instant case, the district court held that, due to Signal's alleged attempts to disguise the liners as GE products, Ameristar's notice was timely as a matter of law. We find that several issues of fact preclude that determination. First, 3D's June 1997 letter advising Signal that its investor was "cool" in purchasing military parts raises the question of whether Ameristar knew from the outset that it was not receiving commercial liners. Furthermore, when Ameristar accepted deliveries of Signal's liners between August and November 1997, it did not question the liners' authenticity, despite the lack of GE documentation, GE bar codes or GE packaging. On December 19, 1997, Ameristar wrote 3D demanding "paper work showing certification and traceability of inner and outer shells" by "2:00 p.m. today." There is no evidence that 3D ever responded to that request, yet Ameristar failed to contact Signal with its concerns. As early as February or March 1998, the FAA approached Ameristar with suspicions that the liners were not manufactured by GE and therefore were not appropriate for use in commercial planes. Still, Ameristar failed to notify Signal of a problem, and in fact continued selling the liners through March. Despite the FAA's concerns about the liners' authenticity and its own questions about their origin, Ameristar did not notify Signal of the alleged defect until April 30, 1998. In light of the equivocal evidence in the record, we find that there is room for ordinary minds to differ on the issue of whether Ameristar's notice to Signal was timely.

Accordingly, because there is insufficient evidence to support its conclusions, we reverse the district court's determinations that Signal breached the warranty of merchantability and that Ameristar's notice was timely as a matter of law. These questions should have been left to the trier of fact, and we remand the case for further proceedings consistent with this opinion.

C.   Damages

Under Texas law, a buyer's damages on a breach of warranty claim are the difference between the value of the goods as accepted and the value of the goods as warranted, unless special circumstances show proximate damages of a different amount. *See* TEX. BUS. & COM. CODE § 2.714(b). In the instant case, the district court set the value of the liners as warranted at $12,100.00 per set; held that the liners as delivered were worthless; and offset the damages by $401,466.40, the amount Ameristar received through resale. We find several problems with this calculation.

First, the district court based the value of the goods as warranted on GE's list price for commercial combustion liners. However, as was explained above, the record evidence does not compel the conclusion that Signal actually warranted the liners as commercial GE parts. In addition, the district court set the market value of commercial GE combustion liners at $12,100.00 per set when Ameristar was actually selling the liners to third parties at a much lower price. Second, the district court held that the

9

liners as delivered had no value because they were not suitable for use in commercial airplanes in the United States. However, the record is devoid of evidence that there is no alternative market for these parts, which Signal contends can lawfully be used in military aircraft. Accordingly, there is no basis in the summary judgment record for Ameristar's assertion that the liners are worthless.

Finally, the district court offset Ameristar's damages by $401,466.40, the amount it received from reselling an unspecified number of liners to third parties through 3D. Despite these sales, the district court awarded damages for all 120 liners at $12,100.00 per set, thereby granting Ameristar an improper windfall. Accordingly, in the event that Signal is found liable on remand, we hold that the district court's damages calculation must be revised.

D.    Attorneys' Fees and Evidentiary Rulings

In addition to the breach of warranty claim, Signal appeals two of the district court's evidentiary rulings and the district court's refusal to award attorneys' fees in connection with Ameristar's failed Deceptive Trade Practices Act ("DTPA") claim. First, we affirm the district court's decision to admit Thomas Woo's affidavit into evidence and to exclude Masbe employee Chun Tsai Lu's affidavit as untimely. Finally, we do not find that Ameristar's DTPA claim was groundless and therefore affirm the district court's decision not to award fees. *See* TEX. BUS. & COM.

10

CODE § 17.50(c) (providing for award of attorneys' fees for groundless claims brought under the DTPA); <u>Donwerth v. Preston II Chrysler-Dodge, Inc.</u>, 775 S.W.2d 634, 637 (quoting TEX. R. CIV. P. 13)(holding that a "groundless" claim under the DTPA is a claim that has "no basis in law or fact and [is] not warranted by good faith argument for the extension, modification, or reversal of existing law").

## III.

### CONCLUSION

For the reasons explained above, the district court's grant of partial summary judgment in favor of Ameristar is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

11