**Emi S. ESQUIBEL, Plaintiff,**

v.

**CHASE MANHATTAN BANK USA, N.A., Defendant.**

**No. CIV.A. H–06–0419.**

United States District Court, S.D. Texas, Houston Division.

March 9, 2007.

Neal Durant Cannon, Jr., Attorney at Law, Houston, TX, for Plaintiff.

David W. Waddell, Seyfarth Shaw LLP, Houston, TX, for Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

LAKE, District Judge.

Having reviewed the Magistrate Judge's Memorandum and Recommendation and the objections and response thereto, the court is of the opinion that said Memorandum and Recommendation should be adopted by this court.

It is, therefore, **ORDERED** that the Memorandum and Recommendation is hereby **ADOPTED** by this court.

The Clerk shall send copies of this Order to the respective parties.

## MEMORANDUM, RECOMMENDATION AND ORDER

JOHNSON, United States Magistrate Judge.

Pending before the court[1] are Plaintiff's Motion for Partial, Interlocutory Summary Judgment (Docket Entry No. 24); Defendant's Motion for Summary Judgment (Docket Entry No. 30); and Plaintiff's Motion to Strike (Docket Entry No. 33). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's Motion for Partial, Interlocutory Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED.**

The court **DENIES** Plaintiff's Motion to Strike. Plaintiff's motion seeks to strike exhibits, footnotes, and factual representations presented by Defendant in connection with its motion for summary judgment. The court finds Defendant's thorough response convincing and, for the reasons expressed therein, finds Plaintiff's motion to lack merit. Additionally, the exhibits, footnotes, and factual representations that Plaintiff seeks to strike involve issues that the court did not consider in deciding the summary judgment motions. As the court does not rely on any incompetent summary judgment evidence to support this opinion, the court finds it unnecessary to strike any evidence submitted by the parties.

### I. Case Background

Plaintiff brought this consumer credit action pursuant to the Fair Credit Billing Act ("FCBA")[2] against one of her creditors in order to recover statutory damages for Defendant's alleged failure to fulfill its statutory obligations in response to notices of billing errors sent by Plaintiff. Plaintiff seeks $338,000 in damages.

On July 4, 2004 Plaintiff applied with Defendant[3] to open a credit card account

---

1. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 28.

2. 15 U.S.C. §§ 1666–1666j.

3. Plaintiff applied for a credit card with Bank One Corporation. Since opening the account, Bank One Corporation merged with J.P. Morgan Chase and Co. *See* Memorandum

for personal, family, and/or household purposes.[4] At that time, Plaintiff signed a statement indicating that she had "read and agreed to all the terms, authorizations, and disclosures included with this form."[5] Plaintiff did not retain a copy of her application.[6] Defendant opened an open-end account in Plaintiff's name and provided Plaintiff with an introductory interest rate of 0%.[7]

On July 21, 2004, Plaintiff transferred a credit balance of $3687.46 to the account.[8] Defendant assessed Plaintiff a transaction fee in the amount of $50.00 for the transfer.[9] After receiving the statement covering the period July 21 to August 12, Plaintiff submitted a payment in the amount of $75.00.[10] The only other principal charge on the account appeared on the next state-

ment and resulted from a convenience check that Plaintiff wrote to herself for $8000.00.[11] Defendant charged Plaintiff a transaction fee in the amount of $50.00 on the convenience check.[12]

Plaintiff submitted no other payments on the account.[13] Each month thereafter, Defendant assessed a late fee in the amount of $35.00.[14] On the statement for the period December 13, 2004, through January 12, 2004, Defendant began charging interest on the average daily. balance.[15] By March, Plaintiff's balance rose to an amount that exceeded her credit limit.[16] Defendant assessed a fee in the amount of $29.00 for exceeding the limit.[17] The statement dated March 13 through April 12, 2005, also included an over-the-limit fee

---

of Defendant in Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of Defendant's Countermotion for Summary Judgment ("Defendant's Memorandum"), Docket Entry No. 31, Ex. B, Plaintiff's Deposition, Ex. 3, account statement dated Aug. 13–Sept. 14, 2004. As this merger in no way affects the lawsuit, the court refers to either company and to both companies as "Defendant."

4. *See id.* at Ex. B, Plaintiff's Deposition, p. 22 and Ex. 2, AARP Rewards Platinum VISA Card application dated July 4, 2004.

5. *See id.* at Ex. 2, AARP Rewards Platinum VISA Card application dated July 4, 2004; *see also id.* at pp. 22, 45–46.

6. *See id.* at p. 46.

7. *See id.* at p. 127 and Ex. 3, account statements (reflecting 0% interest for the monthly billings periods July 21 to August 12, 2004, August 13 to September 14, 2004, September 15 to October 13, 2004, October 14 to November 12, 2004, and November 13 to December 12, 2004). All of the account statements also are attached to Plaintiff's Motion for Partial, Interlocutory Summary Judgment ("Plaintiff's Motion"), Docket Entry No. 24, as exhibits 1–G through 1–O. For convenience only, the court cites to Defendant's exhibits when referring to the account statements.

8. *See* Defendant's Memorandum, Docket Entry No. 31, Ex. B, Plaintiff's Deposition, pp. 40–41 and Ex. 3, account statement dated July 21–Aug. 12, 2004.

9. *See id.* at Ex. 3, account statement dated July 21–Aug. 12, 2004.

10. *See id.* at Ex. 3, account statement dated Aug. 13–Sept. 14, 2004.

11. *See id.* at pp. 40–41 and Ex. 3, account statement dated Aug. 13–Sept. 14, 2004.

12. *See id.* at Ex. 3, account statement dated Aug. 13–Sept. 14, 2004.

13. *See id.* at Ex. 3, account statements.

14. *See id.* at Ex. 3, account statements dated Sept. 15–Oct. 13, 2004, Oct. 14–Nov. 12, 2004, Nov. 13–Dec. 12, 2004, Dec. 13–Jan. 12, 2005, Jan. 13–Feb. 12, 2005, Feb. 13–Mar. 12, 2005, Mar. 13–Apr. 12, 2005.

15. *See id.* at Ex. 3, account statements dated Dec. 13–Jan. 12, 2005, Jan. 13–Feb. 12, 2005, Feb. 13–Mar. 12, 2005, Mar. 13–Apr. 12, 2005.

16. *See id.* at Ex. 3, account statement dated Feb. 13–Mar. 12, 2005.

17. *See id.*

in the amount of $29.00.[18]

In response to the statement dated October 14 to November 12, 2004, Plaintiff sent a letter to Defendant's dispute department.[19] The letter identified the account number and Plaintiff's name and read:

### FIRST NOTICE OF BILLING ERRORS [20]

Pursuant to 15 U.S.C. [§ ] 1666, I am writing you at the address on my billing statements to be used for billing inquiries within sixty days of receiving a statement of my account dated 11/12/2004 in connection with extensions of consumer credit. I hereby provide you notice that I believe said statement contains errors in the total amount you allege to be due, and other more specific items, as laid out more completely below. My belief that the statement contains billing errors under 15 U.S.C. [§ ] 1666(b)(1), (2) and (5) is based upon my belief that you failed to give all the proper disclosures required by law to me prior to opening this account, and additional disclosures since then. Because you failed to provide these disclosures, the account could not legally be opened and I should not be responsible for the payment of interest, fees or other finance charges. While I understand I will likely still be responsible for the repayment of purchases and cash advances, I do not believe I should be responsible for interest, finance charges and other fees. As I have made payments [sic] on this account that have been applied to these improper charges the items I claim are billing errors are improperly reflected on the statements in the incorrect amount and/or inaccurate due to a computational or accounting error.

### DISPUTE OF OBLIGATION AND BILLING ERROR PURSUANT TO 15 U.S.C. [§ ] 1666(b)(1) and (5)

Because I believe I should not have been charged finance charges or fees for the history of this account, I dispute the accuracy of the following items on my statements which have been calculated based on the inclusion of those charges: the current balance, the amounts and payments due and all finance charges and other fees charged since the account was opened. The exact amount of all such previous finance charges and fees hereby disputed will be determined after you provide the documentary evidence requested below.[21]

In the letter, Plaintiff specifically challenged the statement amounts for current balance, "finance charges and fees of $35.00," and minimum payment.[22] The letter continued:

18. *See id.* at Ex. 3, account statement dated Mar. 13–Apr. 12.

19. *See* Plaintiff's Motion, Docket Entry No. 24, Ex. 1–A, letter from Plaintiff to Defendant dated Dec. 1, 2004.

20. This was not, in fact, Plaintiff's first such letter. Plaintiff addressed a letter dated September 30, 2004, to Customer Service. *See* Defendant's Memorandum, Docket Entry No. 31, Ex. B, Plaintiff's Deposition, Ex. 8, letter from Plaintiff to Defendant dated Sept. 30, 2004. Therein, Plaintiff claimed a billing error on an earlier statement for which she was seeking clarification. *See id.* That letter is not one on which this suit is based. *See* Plaintiff's First Amended Complaint, Docket Entry No. 18.

21. Plaintiff's Motion, Docket Entry No. 24, Ex. 1–A, letter from Plaintiff to Defendant dated Dec. 1, 2004, p. 1.

22. *Id.* at pp. 1–2.

### BILLING ERROR PURSUANT TO 15 U.S.C. [§ ] 1666(b)(2)

Because your claim as to my indebtedness rests on the existence of the alleged account and cardholder agreement, if the account was not able to be opened properly because of your failure to give the disclosures, then the amount of the indebtedness is called into question. Therefore, I request the documentary evidence of indebtedness detailed below. The statement contains billing errors under 15 U.S.C. [§ ] 1666(b)(2) in that the statements reflect inaccuracies through their individual items, the entire balance due, finance charges and all extensions of consumer credit for which you claim I am indebted to you, and I request additional clarification regarding all such extensions of consumer credit, including all documentary evidence thereof you possess or are able to obtain, specifically including, but not limited to the following .... [23]

Plaintiff requested eight categories of documentation, including copies of all records of her authorizations for purchases and copies of all documents showing that all legally required disclosures were given to her.[24] Plaintiff invited Defendant to call her at home with questions on the account.[25]

The letter, which was dated December 1, 2004, was received by Defendant on December 6, 2004.[26] Defendant sent Plaintiff a response on December 9, 2004, which stated, in part:

As your credit card company, it is important that we provide you with timely information regarding your account.

Our records indicate that we have previously responded to the concerns expressed in your most recent letter. We also believe that our previous response adequately addressed those concerns. Please be advised that future inquiries, which reflect the same concerns and contain no new information, will be filed with your account records and will not receive a response.[27]

Plaintiff sent five more such letters, in which she asserted billing errors in identical language.[28] Those letters were dated January 3, 2005, January 31, 2005, February 27, 2005, March 24, 2005, and April 22, 2005, and were received by Defendant on (respectively) January 6, 2005, February 3, 2005, March 4, 2005, April 5, 2005, and April 28, 2005.[29] Plaintiff also sent two letters, dated December 27, 2004, and April 8, 2005, that read:

### RESPONSE TO ALLEGED COMPLIANCE WITH MY NOTICE OF BILLING ERROR

Recently, I sent you a billing error notice pursuant to 15 USC [§ ] 1666, Correction of Billing Errors. Your company sent a response, dated 12/9/2004 which you may have consid-

---

**23.** *Id.* at p. 2.

**24.** *Id.*

**25.** *Id.* at p. 3.

**26.** Defendant's Answer to Plaintiff's First Amended Complaint, Docket Entry No. 23, ¶ 4.

**27.** Plaintiff's Motion, Docket Entry No. 24, Ex. 1–P, letter from Defendant to Plaintiff dated Dec. 9, 2004.

**28.** *See* Plaintiff's Motion, Docket Entry No. 24, Exs. 1–B, 1–C, 1–D, 1–E, 1–F, letters from Plaintiff to Defendant dated (respectively) Jan. 3, 2005, Jan. 31, 2005, Feb. 27, 2005, Mar. 24, 2005, Apr. 22, 2005.

**29.** *See id.;* Defendant's Answer to Plaintiff's First Amended Complaint, Docket Entry No. 23, ¶ 4.

ered to have resolved the dispute. I hereby notify your company that my billing error remains unresolved and my entire balance is still in dispute, as you have not corrected the error, performed a reasonable investigation, sent adequate written clarification or sent copies of the requested documentary evidence. I suggest you review my original correspondence and respond adequately as required by various consumer protection statutes. I expect this time you will take this correspondence seriously.[30]

On January 6, 2005, February 1, 2005, February 16, 2005, and March 21, 2005, Defendant sent Plaintiff letters that promised, "We can help you get control of your balance today!"[31] The letters offered payment plans and other options to help Plaintiff pay her credit bills.[32]

On March 12, 2005, Defendant wrote Plaintiff, apparently in response to an inquiry about the arbitration clause in the Cardmember Agreement.[33] The very next day and again on April 8, 2005, Defendant wrote Plaintiff to notify her that the account balance was scheduled to be written off as a bad debt, at which time it would be reported to all national credit reporting agencies.[34] The letters invited Plaintiff to call in order to set up a payment arrangement before Defendant wrote off the debt.[35] On May 9, 2005, Viking Collection Service Southwest, Inc., ("Viking") sent Plaintiff a past due notice, seeking to collect $12,517.81.[36] Defendant also sent Plaintiff two letters in May seeking to set up payment arrangements.[37]

Plaintiff filed an arbitration complaint against Defendant on October 20, 2005.[38] After a five-month period without correspondence, Defendant sent Plaintiff a letter dated October 26, 2005, acknowledging her request for arbitration.[39] Plaintiff dismissed the arbitration claim, in favor of filing this action in federal court, after she discovered that her original Cardmember Agreement did not contain an arbitration clause.[40]

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and

---

30. Plaintiff's Motion, Docket Entry No. 24, Ex. 1–AB, letter from Plaintiff to Defendant dated Dec. 27, 2004; *see also* Ex. 1–AC, letter from Plaintiff to Defendant dated Apr. 8, 2005 (using identical language regarding Defendant's response dated March 12, 2005).

31. *See* Plaintiff's Motion, Docket Entry No. 24, Exs. 1–Q, 1–R, 1–S, 1–V, letters from Defendant to Plaintiff dated (respectively) Jan. 6, 2005, Feb. 1, 2005, Feb. 16, 2005, Mar. 21, 2005.

32. *See id.* at Exs. 1–Q, 1–R, 1–S, 1–V, letters from Defendant to Plaintiff dated (respectively) Jan. 6, 2005, Feb. 1, 2005, Feb. 16, 2005, Mar. 21, 2005.

33. *See id.* at Ex. 1–T, letter from Defendant to Plaintiff dated Mar. 12, 2005.

34. *Id.* at Exs. 1–U, 1–W, letters from Defendant to Plaintiff dated (respectively) Mar. 13, 2005, Apr. 8, 2005.

35. *Id.* at Exs. 1–U, 1–W, letters from Defendant to Plaintiff dated (respectively) Mar. 13, 2005, Apr. 8, 2005.

36. *Id.* at Ex. 1–X, notice from Viking to Plaintiff dated May 9, 2005.

37. *Id.* at Exs. 1–Y, 1–Z, letters from Defendant to Plaintiff dated (respectively) May 11, 2005, May 24, 2005.

38. *See* Defendant's Memorandum, Docket Entry No. 31, Ex. B, Plaintiff's Deposition, Ex. 6, Arbitration Claim.

39. *See* Plaintiff's Motion, Docket Entry No. 24, Ex. 1–AA, letter from Defendant to Plaintiff dated Oct. 26, 2005.

40. *See* Defendant's Memorandum, Docket Entry No. 31, Ex. B, Plaintiff's Deposition, p. 109.

the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brown v. City of Houston, Tex.*, 337 F.3d 539, 540–41 (5th Cir.2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir.2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992). If the moving party meets its burden, the non-moving party must then go beyond the pleadings and produce competent evidence that establishes each of the challenged elements of the case and demonstrates that genuine issues of material fact do exist to be resolved at trial. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

## III.  Analysis

Plaintiff moves for partial summary judgment, asking the court to rule that: 1) Plaintiff's letters dated December 1, 2004, January 3, 2005, January 31, 2005, February 27, 2005, March 24, 2005, and April 22, 2005, were billing error notices that triggered Defendant's FCBA obligations; 2)

Defendant failed to comply with its statutory duties; and 3) Plaintiff is entitled to statutory damages in the amount of $1000 for each violation. Defendant seeks summary judgment that: 1) Plaintiff's letters were not valid notices of billing error; 2) even if valid, Plaintiff's letters were untimely; 3) even if the letters were valid and timely, the statute of limitations bars Plaintiff's claim under the FCBA; 4) the applicable damage provision allows for a single award of up to $1000.

Both parties agree that the court must first determine whether Plaintiff's letters qualify as billing error notices. The court begins there and determines that they do not meet the statutory definition of billing error notices. Because, as the parties note, that alone defeats Plaintiff's claims, the court does not address any other argument.

### A.  *Statutory Scheme*

The Truth-in-Lending Act ("TILA")[41] is designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Because the statute is remedial in nature, some courts have construed its provisions liberally in favor of consumers. *See, e.g., Kurz v. Chase Manhattan Bank*, 273 F.Supp.2d 474, 477 (S.D.N.Y.2003) (making this assertion without citing to any legal authority); *Eicken v. USAA Fed. Sav. Bank*, Civil Action No. H–05–4139, 2006 WL 1663371, at *2 (S.D.Tex. June 12, 2006) (unpublished) (employing a liberal interpretation of the statute to find that the plaintiff's allegations survived the defendant's motion to dismiss).

---

41.  15 U.S.C. §§ 1601–1677.

The FCBA, which is enforced by the TILA and implemented by Regulation Z,[42] provides an avenue by which a debtor may challenge perceived billings errors on any credit card account statement and procedures that a creditor must follow in responding to properly raised billing errors. *See* 15 U.S.C. § 1666; *Pinner v. Schmidt,* 805 F.2d 1258, 1264 (5th Cir.1986).

To trigger the creditor's obligations to investigate and verify its billing, the debtor must provide the creditor with written notice, within sixty days of the challenged statement date, in which the debtor: (1) identifies her name and account number; (2) "indicates the obligor's belief that the statement contains a billing error and the amount of such billing error;" and (3) explains the obligor's belief that the statement contains a billing error. 15 U.S.C. § 1666(a); *see also* 12 C.F.R. § 226.13(b); *Am. Express Co. v. Koerner,* 452 U.S. 233, 235–36, 101 S.Ct. 2281, 68 L.Ed.2d 803 (1981); *Dawkins v. Sears Roebuck & Co.,* 109 F.3d 241, 243 (5th Cir.1997); *Pinner,* 805 F.2d at 1264. A billing error is defined as:

(1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.

(2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.

(3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.

(4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

(5) A computation error or similar error of an accounting nature of the creditor on a statement.

(6) Failure to transmit the statement required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

(7) Any other error described in regulations of the Board.

15 U.S.C. § 1666(b); *accord* 12 C.F.R. § 226.13(a) (reiterating the definitions set forth in the statute along with two additional definitions that are not applicable in this case).

Upon receipt of a qualifying written notice, the creditor must respond with a written acknowledgment within thirty days. 15 U.S.C. § 1666(a); *see also* 12 C.F.R. 226.13(c)(1); *Dawkins,* 109 F.3d at 243. Within two complete billing cycles, the creditor either must make appropriate corrections to the account and notify the debtor of those corrections or must send a written clarification, after an investigation, that explains the reason why the creditor believes the statement is correct as it stands. 15 U.S.C. § 1666(a); *see also* 12 C.F.R. 226.13(c)(2), (e), (f); *Koerner,* 452 U.S. at 236–37, 101 S.Ct. 2281. Either way, the creditor also must send all documentary evidence requested by the debtor, may not take any action to collect the disputed amount, and may not make or threaten to make an adverse report concerning the debtor's credit standing based on the debtor's failure to pay the disputed amount. 15 U.S.C. § 1666(a), (c), (d); *see also* 12 C.F.R. 226.13(d), (f). "A creditor that has fully complied with the requirements of this section has no further re-

---

**42.** 12 C.F.R. §§ 226.1–226.35.

sponsibilities under this section ... if a consumer reasserts substantially the same billing error." 12 C.F.R. 226.13(h); *see also* 15 U.S.C. § 1666(a).

## B. *Adequacy of Plaintiff's Letters*

Defendant accuses Plaintiff of participating in a scheme that was "not intended to resolve a billing error (no error exists), but rather to create and perpetuate a false billing dispute in order to facilitate 'claims' to statutory penalties" and to "avoid[ ] her credit card payment obligations." [43]  In essence, Defendant argues that Plaintiff's letters fail to present a good faith belief that the statements contain errors and fail to assert a valid billing error due to their vague references to disclosure violations. Defendant also contends that a disclosure violation is not the proper subject of a billing error notice when the cardholder is using the account in question. The court agrees with Defendant that Plaintiff's letters do not assert valid billing errors, but not for the reasons argued by Defendant.

■  Plaintiff's letters certainly appear to be part of a premeditated scheme to alleviate her debt responsibilities. Nevertheless, the statute imposes no good faith requirement. In fact, the statute requires only that the debtor *indicate a belief* that the statement contains an error. *See* 15 U.S.C. § 1666(a)(2). Although the court doubts that Congress intended for debtors to use a statute designed for their protection as a weapon to avoid legitimate debt, [44] the court finds no basis for reading a good

faith requirement into the explicit statutory design.

In *Koerner*, the U.S. Supreme Court loosely referred to the debtor's *belief* that the statement contains a billing error, but stopped far short of rewriting the statute to require a *good faith* belief. *See Koerner*, 452 U.S. at 235–36, 101 S.Ct. 2281. No other binding caselaw indicates that creditors need only respond to notices of billing errors submitted in good faith. In addition to a few arbitration awards and lower court decisions ruling in favor of a good faith requirement, Defendant points only to a footnote in a regulations provision [45] and the official staff interpretations of the regulations [46] that mention good faith.

The regulations state that "[a] creditor shall not accelerate any part of the consumer's indebtedness or restrict or close a consumer's account solely because the consumer has exercised *in good faith* rights provided by this section." 12 C.F.R. § 226.13 n.27.  A plain reading of this statement does not absolve a creditor of its responsibility to adhere to all of its billing error obligations if the billing error was asserted in bad faith, but, rather, implicitly condones a creditor's acceleration of debt collection and restriction or closing of an account when the debtor acted in bad faith.

In commenting on section 226.13, the staff notes, "Since the Act grants the consumer error resolution rights, the creditor should avoid any chilling effect on the good

---

**43.** Defendant's Memorandum, Docket Entry No. 31, pp. 4, 7.

**44.** *Cf.* Defendant's Memorandum, Docket Entry No. 31, Ex. D, *Chase Bank v. Vivalo*, Case No. MC–06352 (S.D.Tex. Sept. 6, 2006), at pp. 1, Ex. A, p. 9 (affirming an arbitration award that stated, "[A]llowing a bad faith allegation to serve as the basis for an FCBA billing error notice is contrary to logic, public policy, and the stated purposes of the FCBA.")

**45.** 12 C.F.R. § 226.13 n.27.

**46.** 12 C.F.R. pt. 226, supp. I, official staff commentary, Introduction ("This commentary is the vehicle by which the staff of the Division of Consumer and Community Affairs of the Federal Reserve Board issues official staff interpretations of Regulation Z ....").

faith assertion of errors that might result if charges are assessed when no billing error has occurred." 12 C.F.R. pt. 226, supp. I, official staff commentary, § 226.13. Although the statement clearly indicates a concern only for good faith assertions of billing errors, it does not grant a creditor permission to ignore a billing error notice sent in bad faith. As Plaintiff notes, the commentary simply suggests an ambivalence toward any "chilling effect" on notices sent in bad faith.

The bottom line is that the court is unwilling to read a subjective, good-faith requirement into an objective statutory scheme. *Cf. Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (stating that "caution must temper judicial creativity in the face of legislative or regulatory silence"); *Smith v. Chapman,* 614 F.2d 968, 971 (5th Cir.1980) (noting, in a case addressing disclosures in a retail installment contract, that "an objective standard is used in determining violations of TILA" and that it is not necessary that the consumer actually have been deceived by the disclosure violations). As the FCBA reads, when a debtor sends a timely notice of billing error that identifies her name and account number, indicates a belief that the statement contains a billing error, and explains her belief, the creditor must comply with the statutory obligations. *See* 15 U.S.C. § 1666(a).

■ That is not to say that every letter submitted by a debtor qualifies as a billing error notice. *Cf. Dawkins,* 109 F.3d at 243

(finding that a letter received by the creditor outside of the sixty-day period did not trigger the creditor's FCBA duties). The written notice must point out some perceived problem with a statement that meets the statutory definition of billing error. Defendant argues that Plaintiff's complaint that Defendant failed to give her all of the required disclosures prior to opening the account does not allege an error that appears on a statement. And, even if it did, Plaintiff's continued use of the account after Defendant failed to provide the requisite disclosures allows Defendant to view the account as "not rejected," citing to the official staff interpretations of regulation 226.5(b)(1).

Plaintiff's letters each stated that she believed that the most recent statement "contain[ed] billing errors under 15 U.S.C. [§ ] 1666(b)(1), (2) and (5)." [47] Those sections define billing errors to include: an extension of credit that either was not made by the debtor or was not made in the amount reflected on the statement; an extension of credit for which the debtor seeks additional clarification; and a computation error. *See* 15 U.S.C. § 1666(b). Plaintiff explained that the reason for her assertion that a billing error occurred was her "belief that [Defendant] failed to give all the proper disclosures required by law ... prior to opening this account, and additional disclosures since then." [48] Based on Plaintiff's belief that Defendant failed to provide required disclosures, she asserted that she was not "responsible for interest, finance charges and other fees." [49] As a

---

**47.** Plaintiff's Motion, Docket Entry No. 24, Exs. 1–A, 1–B, 1–C, 1–D, 1–E, 1–F, letters from Plaintiff to Defendant dated (respectively) Dec. 1, 2004, Jan. 3, 2005, Jan. 31, 2005, Feb. 27, 2005, Mar. 24, 2005, Apr. 22, 2005, p. 1.

**48.** Plaintiff's Motion, Docket Entry No. 24, Exs. 1–A, 1–B, 1–C, 1–D, 1–E, 1–F, letters from Plaintiff to Defendant dated (respective-

ly) Dec. 1, 2004, Jan. 3, 2005, Jan. 31, 2005, Feb. 27, 2005, Mar. 24, 2005, Apr. 22, 2005, p. 1.

**49.** Plaintiff's Motion, Docket Entry No. 24, Exs. 1–A, 1–B, 1–C, 1–D, 1–E, 1–F, letters from Plaintiff to Defendant dated (respectively) Dec. 1, 2004, Jan. 3, 2005, Jan. 31, 2005, Feb. 27, 2005, Mar. 24, 2005, Apr. 22, 2005, p. 1.

result of the inclusion of interest, finance charges, and other fees (in particular, over-the-limit fees and late fees) in the balance and payments-due amounts on the statement, Plaintiff claimed to dispute the entire balance.[50]

According to Plaintiff's characterization, the errors asserted were the accuracy of finance charges, fees, minimum payment, and total amount due and the reason for the error was Defendant's failure to disclose.[51] Even though Plaintiff's characterization is a strained application of the FCBA, the court accepts Plaintiff's description of the alleged billing errors as the accuracy of finance charges, fees, minimum payment, and total amount due. As such, Defendant's focus on disclosure is misplaced. Thus, although the court agrees with Defendant that disclosure violations do not qualify as billing errors under the definitions in section 1666(b), the court determines that not to be the correct inquiry. The proper question in determining whether Plaintiff's letters are valid notices of billing errors is whether finance charges and fees are extensions of credit under the billing error provision.

"Finance charge" is defined by the statute as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as *an incident to the extension of credit.*" 15 U.S.C. § 1605(a) (emphasis added). By definition, then, finance charges are different from extensions of credit; they are *incident to* extensions of credit. Both the first and second definitions of billing error, ones on which Plaintiff relies, require that the statement reflect "an extension of credit" that is challenged. Plaintiff's challenge of interest[52] and finance charges fails to meet this requirement.[53]

In the regulations, over-the-limit and late-payment fees are explicitly excepted from the definition of finance charge. 12 C.F.R. § 226.4(c)(2). The exception of these terms from the definition of finance charge, however, does not make them extensions of credit. In another provision of TILA, "over-the-limit fee" is defined as "[a]ny fee imposed *in connection with an extension of credit* in excess of the amount of credit authorized to be extended with respect to such account." 15 U.S.C. § 1637(c)(1)(B)(iii) (emphasis added); *but*

**50.** Plaintiff's Motion, Docket Entry No. 24, Exs., 1–A, 1–B, 1–C, 1–D, 1–E, 1–F, letters from Plaintiff to Defendant dated (respectively) Dec. 1, 2004, Jan. 3, 2005, Jan. 31, 2005, Feb. 27, 2005, Mar. 24, 2005, Apr. 22, 2005, p. 1.

**51.** *See* Plaintiff's Memorandum of Points and Authorities in Support of Motion for Partial, Interlocutory Summary Judgment, Docket Entry No. 25, p. 8; Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Docket Entry No. 37, pp. 9, 14.

**52.** Interest is a finance charge. 15 U.S.C. § 1605(a)(1); 12 C.F.R. § 226.4(b)(1).

**53.** In an unreported decision, a district court in this division reached the opposite conclusion. *Eicken,* 2006 WL 1663371, at *2 ("While it is true that the statutory definitions of 'billing error' do not expressly include fi-

nance charges and fees, the statute obviously contemplates the inclusion of such charges within those definitions ....."). That court finds support for this statement in 15 U.S.C. § 1666(c), which addresses the creditor's right to send statements of account, under certain circumstances, that "may include finance charges on amounts in dispute." *See Eicken,* 2006 WL 1663371, at *2 (misquoting the statute as "may include finance charges or amounts in dispute"). Section 1666(c) addresses the collection of amounts owed on the account and allows the creditor to send statements that reflect finance charges assessed on the disputed amounts. It does not alter the definitions of billing error provided in the immediately preceding subsection. This court does not agree with the conclusion reached in *Eicken.*

*see* 12 C.F.R. § 226.5a(b)(10) (defining "over-the-limit fee" as "[a]ny fee imposed for exceeding a credit limit"). As with finance charges, over-the-limit fees are something other than extensions of credit. They are assessed *in connection with* extensions of credit. "Late fees" are not defined anywhere in the statute in relation to extensions of credit, but, more simply, as fees imposed for late payments. *See* 15 U.S.C. § 1637(c)(1)(B)(ii); 12 C.F.R. § 226.5a(b)(9).

In reality, both over-the-limit fees and late fees are penalties, not extensions of credit. To highlight this point, the court looks to the regulatory definition of credit: "Credit means the right to defer payment of debt or to incur debt and defer its payment." 12 C.F.R. § 226.2(a)(14); *see also Koerner,* 452 U.S. at 241, 101 S.Ct. 2281. As explained by the U.S. Supreme Court, a creditor "extends credit to an individual . . . when it opens or renews an account, as well as when the cardholder actually uses the credit card to make purchases." *Koerner,* 452 U.S. at 241, 101 S.Ct. 2281. The assessment of a penalty for exceeding the authorized credit limit or for failing to make a timely payment is not a purchase to which the right to defer payment attaches.

The court recognizes that the above interpretation deprives consumers of the right to challenge the assessment of finance charges and fees under the billing error provisions of the FCBA. It is the statute itself, not the court, that leaves finance charges and fees out of the definition of billing error. The court cannot ignore the statutory scheme in favor of providing consumers with greater protection than that allowed by Congress. *Cf. Millhollin,* 444 U.S. at 565, 100 S.Ct. 790 (noting that "judges are not accredited to supersede Congress or the appropriate

agency by embellishing upon the regulatory scheme"). Challenges to the accuracy of finance charges and fees do not qualify as billing errors under the FCBA.[54]

■ Plaintiff's third alleged billing error of the computational variety is wholly meritless. Plaintiff claimed that, because amounts she was disputing had been added to the total amount owed and the amount due had been calculated from that total, the entire balance was in dispute. Having identified no computation error or accounting error, Plaintiff's assertion did not qualify as a billing error. Allowing Plaintiff's argument would suggest that every challenge, even ones that do not qualify as billing errors (as here), could be transformed into a billing error because the challenged amount was added into the account total from which the minimum payment was calculated. In every case, the challenged amount would bring the entire balance into dispute. This is obviously not the intention, as the statute and regulations separately address the creditor's rights and obligations for disputed and undisputed amounts. *See* 15 U.S.C. § 1666(c) ("Nothing in this section shall be construed to prohibit any action by a creditor to collect any amount which has not been indicated by the obligor to contain a billing error."); 12 C.F.R. pt. 226, supp. I, official staff commentary, § 226.13, ¶ 13(d)(2) ("Although the creditor must not issue an adverse credit report because the consumer fails to pay the disputed amount or any related charges, . . . . the creditor may report the account as delinquent if undisputed amounts remain unpaid.").

The court finds that Plaintiff's six letters (dated December 1, 2004, January 3, 2005, January 31, 2005, February 27, 2005, March 24, 2005, and April 22, 2005) failed

---

**54.** This does not preclude the consumer from challenging finance charges and fees under other provisions of TILA, *e.g.,* as disclosure violations.

to qualify as written notices of billing errors and did not trigger any obligation on Defendant's part. As Defendant did not file for summary judgment based on the specific reasons that the court finds dispositive, proper procedure would require the court to deny both Plaintiff's motion and Defendant's motion and to allow the suit to go to trial. However, the matter is legal in nature, not factual, and a trial could not validate Plaintiff's legally infirm claims. Moreover, Plaintiff has briefed the issue in her summary judgment filings. Even so, the court will consider additional arguments, raised by either party in timely filed objections. The court will reconsider its decision at that time.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's partial summary judgment motion be **DENIED** and Defendant's summary judgment motion be **GRANTED**.

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.