**Dennis R. POLLARD, Plaintiff,**

v.

**J.P. MORGAN CHASE BANK, NA, Defendant.**

**Case No. 14–cv–11668.**

United States District Court, E.D. Michigan, Southern Division.

Signed Aug. 14, 2014.

---

Mark S. Roberts, Dennis R. Pollard, Secrest Wardle, Troy, MI, for Plaintiff.

Laura Baucus, Dykema Gossett, Bloomfield Hills, MI, Thomas H. Trapnell, Dykema Gossett PLLC, Detroit, MI, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [7]

JUDITH E. LEVY, District Judge.

This is a consumer credit case. Pending is defendant J.P. Morgan Chase, NA's motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

### I. Background

Defendant issued plaintiff a credit card in October of 1983, with a 12.49% annual percentage rate ("APR"). In November 2008, plaintiff missed the payment due during that billing cycle. As a result of the delinquent payment, defendant raised the APR applied to plaintiff's credit card to 29.99%.

Plaintiff made timely credit card payments at the 29.99% APR following the November 2008 missed payment. On May 6, 2013, plaintiff wrote a letter to Chase, stating that he did not agree to pay a 29.99% APR in the event of a delinquent payment in the original 1983 cardmember agreement ("the 1983 agreement"). Plaintiff requested a copy of the 1983 agreement, and also asked defendant to consider lowering the APR.

Defendant responded via letter on May 17, 2013, stating that it raised the APR to 29.99% because of the late payment in November 2008, pursuant to the active cardmember agreement. On May 21, 2013, plaintiff sent another letter, again stating that he did not believe that he

agreed to the APR hike in the 1983 agreement, and requesting a copy of the 1983 agreement, along with a reduction of the APR. Plaintiff reiterated his request in a third letter on June 12, 2013.

On June 17, 2013, defendant responded to plaintiff via letter. Defendant informed plaintiff that a copy of the 1983 agreement was not available, as defendant only held on to records for seven years. Defendant also declined to lower the APR on plaintiff's card at that time.

Plaintiff filed suit in this Court on April 25, 2014, claiming violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1666(a)(3)(B)(ii), for failing to provide a copy of the 1983 agreement, and the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666i–1, for failure to impose a reasonable and proportional penalty for the November 2008 late payment and to continue its imposition for more than six months, as well as claims for common-law and statutory conversion under Michigan law, and breach of contract.

## II. Standard of Review

When deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## III. Analysis

The Court will address each of plaintiff's claims in turn.

### A. Violation of TILA, 15 U.S.C. §§ 1666(a)(3)(B)(ii)

Plaintiff alleges that defendant violated 15 U.S.C. § 1666(a)(3)(B)(ii) by failing to provide him with a copy of the 1983 agreement in response to his dispute.[1]

The statute requires that an obligor, within sixty days of receiving a periodic statement from a creditor, notify the creditor of a billing error and the amount thereof. 15 U.S.C. § 1666(a). A "billing error" is defined as a "reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof." 15 U.S.C. § 1666(b)(2).

The creditor must acknowledge the notice within thirty days of receipt. 15 U.S.C. § 1666(a)(3)(A). Within two billing cycles, and in no event later than ninety days after receipt of the notice, and prior to taking any action to collect the amount or any part thereof, the creditor must "send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was

---

**1.** Plaintiff states in his complaint that he "has been damaged ... pursuant to 15 U.S.C. § 1666(a)(3)(B)(i) and (ii)." (Compl. ¶ 13.) However, his complaint only alleges that defendant failed to provide a copy of the original credit card agreement pursuant to § 1666(a)(3)(B)(ii), and does not plead otherwise that defendant violated (B)(i), which requires the creditor to "make appropriate corrections in the account of the obligor." Likewise, the letters plaintiff sent to defendant asked only for a copy of the 1983 agreement or, in the alternative, to consider reducing the applicable APR.

correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness." 15 U.S.C. § 1666(a)(3)(B)(ii).

Defendant argues that plaintiff has failed to state a claim for two reasons: first, that a finance charge is not an "extension of credit;" second, that plaintiff's four-and-a-half-year delay in disputing the 29.99% APR falls well outside of the sixty-day period following the first statement reflecting the increased APR.

Defendant's argument that a finance charge is not an extension of credit under TILA is based primarily on two district court cases from outside of this circuit. In *Esquibel v. Chase Manhattan Bank USA, N.A.*, a court in the Southern District of Texas determined that penalties do not constitute extensions of credit. *Esquibel v. Chase Manhattan Bank USA, N.A.*, 487 F.Supp.2d 818, 829 (S.D.Tex.2007). Likewise, in *Langenfeld v. Chase Bank USA, N.A.*, a court in the Northern District of Oklahoma held that "finance charges do not qualify as extensions of credit . . . because they are . . . merely incident to extensions of credit." *Langenfeld v. Chase Bank USA, N.A.*, 537 F.Supp.2d 1181, 1198 (N.D.Okla.2008) (citing 15 U.S.C. § 1605).

In response, plaintiff relies on two cases holding that finance charges are extensions of credit under TILA. *See Raney v. First Nat'l Bank of Neb.*, 2006 WL 2588105, at *3 (E.D.Ky. Sept. 8, 2006); *Eicken v. USAA Fed. Savings Bank*, 2006 WL 1663371, at *2 (S.D.Tex. June 12, 2006). In particular, *Raney* stated that "nothing in § 1666(b) indicates that the scope of the provision was not meant to apply to finance charges." *Raney*, at *3.

■ The text of § 1666(b)(2) requires that the billing error relate to a "reflection on a statement of an extension of credit."

Under the same statute, a "finance charge" is defined as "the sum of all charges, payable directly or indirectly by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an *incident to the extension of credit.*" 15 U.S.C. § 1605 (emphasis added). The statute, by its plain language, does not consider finance charges to be extensions of credit. Accordingly, a dispute over a finance charge cannot constitute a "billing error," because a finance charge is not a "reflection on a statement of an extension of credit." The Court dismisses plaintiff's claim under 15 U.S.C. § 1666(a)(3)(B)(ii).

## B. Violation of the FCBA, 15 U.S.C. §§ 1666i–1 & 1665d

Plaintiff alleges that defendant violated two sections of the FCBA enacted on May 22, 2009, with effective dates in 2010. First, plaintiff alleges that defendant violated 15 U.S.C. § 1666i–1(b)(4), which requires a creditor imposing an APR increase due solely to a payment that is sixty or more days late terminate the increase within six months after the date of imposition, provided the creditor receives timely payments during the period following the increase. Second, plaintiff alleges that defendant violated 15 U.S.C. § 1665d(a), which requires that "the amount of any penalty fee or charge that a card issuer may impose . . . be reasonable and proportional to such omission or violation."

Congress enacted both amendments to the FCBA on May 22, 2009. Pub.L. 111–24. The effective date of § 1666i–1 was February 22, 2010. *Id.* at § 3. The effective date of § 1665d was August 22, 2010. *Id.*

Defendant argues that neither of these claims can be brought, as the statutes were not meant to have retroactive effect. Plaintiff argues that the FCBA is meant to

be read liberally, and that the inclusion of the word "any" in each amended section of the law demonstrates an intent for these sections to apply retroactively to defendant's actions.[2]

■ "Although Congress has the authority to enact retroactive statutes, courts ordinarily do not apply statutes retroactively unless a statute evidences congressional intent to apply retroactively." *Patel v. Gonzales*, 432 F.3d 685, 690 (6th Cir. 2005). A statute's effects are retroactive if the statute "attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). There is a presumption against retroactive application of statutes. *Id.* at 280, 114 S.Ct. 1483.

Defendant's actions took place in November 2008. Neither law was in effect until 2010. Nowhere in the text of the enacting legislation or the amended law does Congress state that the law is meant to be applied to actions taken by creditors before the law's enactment.

■ Plaintiff argues that the use of the word "any" to modify "credit card account" in § 1666i–1 and "penalty fee or charge" in § 1665d demonstrates Congressional intent for the amended sections of the FCBA to have retroactive effect. Plaintiff, however, cites no case where the word "any" alone was sufficient to make a statute retroactive in its scope, rather than extensively broad in its prospective application. "The presumption against statutory retroactivity has consistently been ex-

plained by reference to the unfairness of imposing new burdens on persons after the fact." *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483.

The most logical reading of "any" in the amended sections of the FCBA is that Congress intended for its legislation, when enacted, to have a broad prophylactic effect against future abuses by creditors. Each amended section speaks in terms of what creditors "may" do following the amendments becoming effective, not in terms of what creditors had done prior to that point. *See* 15 U.S.C. § 1666i–1(a) ("no creditor *may* increase . . ."); 15 U.S.C. § 1665d(a) ("The amount of any penalty fee or charge that a card issuer *may* impose . . .") (emphasis added). Further, § 1665d required a nine-month post-enactment rulemaking process to "establish standards for assessing whether the amount of any penalty fee or charge . . . is reasonable and proportional to the omission or violation to which the fee or charge relates." 15 U.S.C. § 1665d(b). The phrase "is reasonable and proportional" implies that the rules reach present, rather than past, behavior.

### C. Common–Law and Statutory Conversion

Plaintiff alleges that defendant, by charging him the increased APR, converted all money plaintiff paid as a result of the increase.

■ Common-law conversion consists of "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights

---

**2.** At oral argument, plaintiff's counsel argued that plaintiff does not want to retroactively apply the statute, as each new bill constitutes a re-imposition of the higher APR. Plaintiff has provided no support for the contention that under the FCBA, a higher APR is imposed each time a new bill containing the higher APR is sent to a debtor. If that were

so, then the requirement of 15 U.S.C. § 1666i–1(b)(4)(B) that an APR increase be terminated "not later than 6 months after the date on which it is imposed" would be meaningless—the rolling imposition of the increase would always be, at most, a month old. The Court declines to adopt this interpretation of "imposition" under the FCBA.

therein." *Foremost Ins. Co. v. Allstate Ins. Co.,* 439 Mich. 378, 391, 486 N.W.2d 600 (1992). "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care." *Head v. Phillips Camper Sales & Rental, Inc.,* 234 Mich. App. 94, 111, 593 N.W.2d 595, 603 (1999). "The defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Citizens Ins. Co. v. Delcamp Truck Center, Inc.,* 178 Mich.App. 570, 575, 444 N.W.2d 210 (1989).

██ Here, plaintiff consented to a debtor and creditor relationship. His only contention is that within the confines of that relationship, the creditor improperly charged him extra interest. Plaintiff has not argued that he entrusted defendant with any specific money, or that he did so outside of a debtor and creditor relationship.

██ Statutory conversion under Michigan law consists of:

(a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

M.C.L. § 600.2919a. "[S]imply retaining money does not amount to 'buying, receiving or aiding in the concealment of stolen, embezzled or converted property.'" *Lawsuit Fin., L.L.C. v. Curry,* 261 Mich.App. 579, 593, 683 N.W.2d 233 (2004) (citing *Hovanesian v. Nam,* 213 Mich.App. 231,

237, 539 N.W.2d 557 (1995)). Plaintiff does not allege that defendant violated subsection (a) of the statute, and cannot argue that defendant violated subsection (b).

Accordingly, the Court dismisses plaintiff's common-law and statutory conversion claims.

### D. Breach of Contract

Plaintiff does not possess the governing contract on which his breach of contract claim is based, and does not state which, if any, terms of the contract defendant breached. At its core, a breach of contract claim must rest on some term of a contract that has been breached. Plaintiff argues that he cannot cite terms of the contract because defendant has not provided the 1983 agreement, and that defendant's failure to fulfill its obligation equitably estops the claim from being dismissed.

The Court has already determined that defendant has no statutory duty to provide the 1983 agreement to plaintiff. The Court is also unconvinced that the 1983 agreement is the relevant agreement, as opposed to the cardmember agreement in effect in 2008, when defendant raised plaintiff's APR. Notably, plaintiff has never asked defendant for that cardmember agreement.

██ Further, the cases plaintiff cites for equitable estoppel do not support its argument. *See Morales v. Auto–Owners Ins. Co.,* 458 Mich. 288, 295–96, 582 N.W.2d 776 (1998) (insurer equitably estopped from enforcing an automatic nonrenewal provision in a contract); *Charter Tp. of Harrison v. Calisi,* 121 Mich.App. 777, 787, 329 N.W.2d 488 (1982) (equitable estoppel or estoppel in pais is available as a protection from a defense raised by defendant); *Woodruff v. State Farm Mut. Auto. Ins. Co.,* 2014 WL 2218722, at *5 (Mich.App. May 27, 2014) (parties equita-

bly estopped from asserting facts where inequitable to do so). None of these cases permit a claim for breach of contract to survive where the plaintiff requested a thirty-year-old copy of an agreement that defendant was under no obligation to keep or produce to plaintiff, and plaintiff can point to no contractual term that defendant allegedly breached.

Accordingly, the Court dismisses plaintiff's breach of contract claim.

## IV. Conclusion

Plaintiff has failed to state a claim upon which relief may be granted. Accordingly,

Defendant's motion to dismiss is GRANTED; and

Plaintiff's complaint is DISMISSED.

IT IS SO ORDERED.